Joseph J. **HURST**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 21140.

United States Court of Appeals
Fifth Circuit.

Oct. 26, 1964.

---

Jesse G. Bowles, Cuthbert, Ga., Bentley H. Chappell, Columbus, Ga., Foley, Chappell, Young, Hollis & Schloth, Columbus, Ga., for appellant.

Floyd M. Buford, U. S. Atty., Gary B. Blasingame, Asst. U. S. Atty., Macon, Ga., for appellee.

Before TUTTLE, Chief Judge, BELL, Circuit Judge, and WHITEHURST, District Judge.

TUTTLE, Chief Judge.

The appellant here complains of his conviction on four counts of an indictment for violating various sections of the Internal Revenue laws relating to nontaxpaid whiskey. The first count was a conspiracy count, whereas the remaining three counts charge substantive offenses against Hurst and other various defendants.

The case against Hurst was made out largely by the testimony of an informer, who had formerly been active in the illegal whiskey business. While the evidence connecting Hurst with the conspiracy and with the substantive counts of the indictment was sufficient to warrant the trial court's submission of the case against the appellant to the jury, it was not strong. This fact emphasizes the importance of our giving careful consideration to the principal argument made on appeal to the effect that the appellant was denied a fair trial because the court permitted the introduction into evidence of eight separate records dealing with prior offenses either charged or proven against him, but which were in no wise connected with the charges for which he was being tried.

This is the way the matter came about: At the conclusion of the informer's testimony, counsel for appellant cross-examined him, and during the cross-examination said: "You knew that Joe Hurst had absolutely no criminal record, didn't you?" To which the witness, Kennington, answered: "I didn't know." Thereupon counsel asked, "Didn't you investigate it?" And Kennington answered, "No, sir, I don't investigate."

On the theory that this statement made by counsel for the appellant in the form of a question, "You knew that Joe Hurst had absolutely no criminal record, didn't you," was tantamount to affirmative evidence or an implication of the fact that Hurst was without a criminal record, cf. Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84; the United States sought to introduce evidence of specific acts of criminal import, to-wit, copies of six indictments, a copy of a sentence, and copy of a plea of guilt. Several of the indictments were nol prossed. Counsel adjourned to the trial judge's chambers for consideration of this proffer of testimony, whereupon, after a long discussion and consideration of the specific items that the Government sought to tender in evidence, the trial court held them all admissible, those which represented indictments, later nol prossed, as well as those indicating convictions or pleas of guilty.

As might be expected, objection was made by the appellant on several grounds. (1) That the defendant had introduced no evidence of his character which this evidence could be used to rebut. (2) That in any event only records of convictions could be used and not indictments that had not proceeded to trial or conviction. (3) That the only use to which this evidence could be put was as a rebuttal to character testimony in favor of the accused.

Upon returning to the courtroom, the trial recommenced and the trial court gave no instructions to the jury as to the purpose for which the eight bits of seriously damaging evidence should be restricted.

■ To begin with, we should make it plain that the question on cross-examination by appellant's counsel was wrong. In the first place, it was irrelevant to any issue being tried. In the second place, it is always improper to ask a leading question designed to produce an answer which, if given as contemplated, would be false. The contemplated answer here, of course, was that the witness knew of no criminal record against Hurst. It is not far-fetched to say that the hoped-for impression to be created in the minds of the jury was that there was in fact no such record against Hurst. While it is true that the witness knew of no such record, it is not true that none existed. The fact of the matter was that there was a damaging record against him. We can assume that counsel in asking about the criminal record was in good faith and knew no outstanding criminal record against his client. Nevertheless, we have no hesitancy in stating that such a question should not have been asked, even though relevant, unless it was factually correct that Hurst had "absolutely no criminal record."

■ The fact that the question should not have been asked, and the further fact that it may well have left the impression in the minds of the jurors that Hurst had had no brushes with the criminal law, does not, on the other hand, open up the flood gates to permit the Government to prove specific criminal acts or criminal charges for the consideration by the jury in their resolving the one issue in the case: Was Hurst guilty of the offenses charged on this indictment?

■ There is probably no better known rule of common law criminal practice than that courts are careful to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Michelson v. United States, 335 U.S. 469, 475, 69 S.Ct. 213, 93 L.Ed. 168. Nevertheless, evidence of a defendant's other wrongdoing is sometimes admissible.

Typical of these exceptions is the occasion when the accused voluntarily puts his

character in issue by taking the stand and testifying or by calling witnesses to prove his good character. Another example is the case in which the courts permit proof of a prior criminal conviction of a similar charge to be made to illustrate either the intent of the accused or to prove his knowledge where scienter is a specific element of the crime charged. Even in this type of case, however, only actual prior convictions can be proved; they must be of the same or similar offenses; they must also have occurred within a reasonable time of the crime alleged. See Burt v. United States, 5 Cir., 139 F.2d 73.

Even where the accused himself puts his character in evidence, and the court may permit him to be cross-examined with respect to specific acts, proof may not generally be made of any prior bad conduct short of proof of an actual conviction of crime. Thus, in none of the exceptions may the jury be told of arrests or indictments which are not followed by a conviction. Much less, of course, can the jury be told of indictments that have been nol prossed, cf. United States v. General Motors Acceptance Corp., 296 F. 2d 246, C.A. 5.

Here, four of the indictments read to the jury were dismissed by the prosecuting authorities. Dealing with this subject Professor Wigmore says, "It should be understood by all courts that the only relevant circumstance is actual conduct— i. e., the fact, not the mere charge, of having misbehaved." Wigmore on Evidence III, 3d Ed. section 980(a). This writer also says, "It follows that a mere arrest or indictment will not be allowed to be inquired after; since the fact of arrest or indictment is quite consistent with innocence, and since the reception of such evidence is merely the reception of somebody's heresay assertion as to the witness's guilt."

We need not consider the question of whether, when the defendant properly raises the issue of his good character, this may be rebutted by extrinsic proof of actual convictions of other crimes. There is much diversity of viewpoint touching on this subject, especially where the de-

fendant is subjected to cross-examination touching on his character. For an analysis of the state of the law in the various jurisdictions of the United States see Wigmore III, 3d Ed. section 987.

The Government contends that this is not a typical case of rebutting proof of good character. Rather, it says that this is a case of rebutting affirmative evidence that Hurst had "no record." The subtlety of this distinction is too refined to permit such damaging testimony to be brought in to disprove this truly irrelevant fact. We conclude, therefore, that whatever the rule may be with respect to rebutting of true character testimony by extrinsic evidence of actual convictions, the exception cannot be broadened to include extrinsic evidence of mere indictments, especially where there have been orders of dismissal finally disposing of the indictments.

It is clear that this kind of evidence will not be tendered on a further trial. Since we hold that there was sufficient evidence to warrant submission of this case to the jury it must be remanded to the trial court to permit the defendant to be tried on the relevant facts.

The judgment is reversed.