436 F.2d 1093
 UNITED STATES of America, Plaintiff-Appellee,
v.
Doris Loraine DILLON, Defendant-Appellant.
No. 28931 Summary Calendar.*
*Rule 18, 5 Cir.; see Isbell Enterprises, Inc
v.
Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409.
 United States Court of Appeals, Fifth Circuit.
 Jan. 8, 1971.
 
 Pat Beard, Waco, Tex., for defendant-appellant.
 Jeremiah Handy, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.
 Before JOHN R. BROWN, Chief Judge, and MORGAN and INGRAHAM, Circuit judges.
 INGRAHAM, Circuit Judge:
 
 
 1
 Appellant Doris Loraine Dillon and her daughter, Sherry Diane Jester, were tried before the district court, sitting without a jury, and convicted of conspiracy in committing the offense of and possession, passing, uttering and publishing counterfeit money in violation of 18 U.S.C. 371 and 472. Appellant received sentences of five years on each of eight counts, the sentences to run concurrently. Her daughter, Mrs. Jester, was placed on probation.
 
 
 2
 The record establishes that on March 26, 1969, while driving between Hillsboro, Texas, and Waco, Texas, Jester and Dillon passed approximately seven counterfeit $10 bills while purchasing various small items at service stations and cafes along the highway. Both defendants below testified that Dillon was a professional short-change artist, that their purpose in changing the $10 bills was to secure the necessary bills with which Dillon could short-change, and that neither knew the bills were counterfeit.
 
 
 3
 Under direct examination Jester described the events leading up to the date of the crime of March 26, 1969. She and Dillon went to Fort Worth and Dallas, Texas, where they raised money by purchasing tires through a credit card given to Jester by her father. She testified that Dillon sold approximately 25 of the tires.
 
 
 4
 Appellant Dillon confined her direct testimony to the events of March 26, 1969, and to a description of her talents as a short-change artist. On cross-examination the government asked appellant Dillon certain questions regarding her refusal to disclose to Federal Agents where and to whom she had sold the tires. Appellant's attorney objected to such testimony about an event that occurred prior to March 26, 1969, because it allegedly exceeded the scope of the direct examination. The court below admitted the testimony only for the purpose of shedding light on the credibility of the witness.
 
 
 5
 The issue on this appeal is whether the prosecution on cross-examination exceeded the scope of the direct examination which appellant contends was limited to the events of March 26, 1969. Appellant relies on the general rule that cross-examination of a defendant in a criminal case must be confined to the subjects of the direct examination, citing Simon v. United States, 123 F.2d 80 (4th Cir. 1941), and Madden v. United States, 20 F.2d 289 (9th Cir. 1927). The court in the latter case, however, stated the rule thusly:
 
 
 6
 'Where a defendant elects to testify in his own behalf he may be cross-examined as any other witness, and with like latitude in respect of matters to which he has testified; but he cannot be compelled to answer as to other facts not relevant to his direct examination. Fitzpatrick v. United States, 178 U.S. 304, 20 S.Ct. 944, 44 L.Ed. 1078; Tucker v. United States (8 Cir.) 5 F.2d 818, 823.' 20 F.2d at 293.
 
 
 7
 Professor Wright has explained that 'since the prosecution cannot call the defendant in a criminal case as a witness, the restrictive rule of cross-examination means that the prosecution may examine a defendant taking the stand in his own defense only on 'facts and circumstances connected with' the subjects on which he has chosen to testify on direct examination.' 2 C. Wright, Federal Practice and Procedure 416, at page 185 (1969).
 
 
 8
 In the case at bar, the sale of the tires was clearly connected with and relevant to the subject matter discussed during the direct examination of each defendant. As we have indicated above, defendant Jester testified about the buying and selling of the tires, and appellant Dillon explained that as a 'professional short-change artist,' she was in need of ready cash.
 
 
 9
 This court finds several reasons for holding that the questions propounded by the prosecution fell within the permissible scope of cross-examination. In the first place, the scope of the direct examination may be exceeded on cross-examination in an effort to test the truthfulness of the witness. Lyda v. United States, 321 F.2d 788, 793 (9th Cir. 1963). 'Thus, inquiries may properly be directed to the witness' interest, his motives, his prejudices or hostilities, his means for obtaining knowledge of the fact, his power of memory, his way of life, his associations and to any pertinent circumstances affecting his credibility.' United States v. Lawinski, 195 F.2d 1, 7 (7th Cir. 1952). In Lewis v. United States, 373 F.2d 576 (9th Cir. 1967), the appellant bank robber was asked on cross-examination whether he was possessed of money when he arrived in the State of Montana and where he got the money. The court was faced with the difficult question of determining whether the evidence of the possession of the large sum of money, though material, was improper cross-examination. It found no impropriety and said:
 
 
 10
 'In coming to such conclusion, we have considered the fact that 'money' was brought into the case on appellant's direct examination. It had to do with appellant's borrowing from the appellant's father $200; appellant obtaining a check in that amount. This was to enable appellant's sister, Jaxie Young, to buy a horse in Flagstaff * * *, 'sell it, and make a little money.' Appellant had gambled at Las Vegas 'on the way down' * * * Had appellant won $5,500 when he stopped at Las Vegas on the way down, and gone to Flagstaff with his sister to purchase a horse, it would be surprising for him to borrow $200 from his father for the purpose of 'making a little money.' That this proposed horse purchase and sale was not to be of benefit to appellant's father was established by appellant's sister's direct examination * * *.
 
 
 11
 'Thus it can be argued that the amount of money appellant had in his possession when he was in Tucson and when he arrived 'home' was 'embraced' in the direct examination. At the least, it raises a question for the court, in the exercise of its judicial discretion, to pass upon. In view of all the other evidence in the case, we will not say the introduction of this one fact was prejudicial error.' 373 F.2d at 578-579.
 
 
 12
 In the instant case, appellant never objected to the answers given by Jester during her direct testimony concerning the purchase and sale of the tires. Her testimony, like the sister's direct examination in the Lewis case, formed a proper predicate upon which to base the government's cross-examination. In short, any possible source of the counterfeit bills which the defendants had in their possession was a matter 'embraced' in their direct examination.
 
 
 13
 We also take cognizance of the fact that this was a bench trial, and, as such, it is presumed that the trial judge relied only upon properly admitted and relevant evidence. United States v. Krol, 374 F.2d 776 (7th Cir. 1967); Teate v. United States, 297 F.2d 120 (5th Cir. 1961). The court below expressly disavowed consideration of Dillon's testimony concerning the tires as bearing on the question of her guilt or innocence. It has been held that the admission of evidence of unrelated crimes, though erroneous, does not require reversal because it is presumed that the experienced trial judge distinguished between proper and improper evidence. United States v. Menk, 406 F.2d 124, 126 (7th Cir. 1969). We have found no indication in the record of any prejudice to appellant's rights in the trial court's actions.
 
 
 14
 There is one final rationale for our affirmance of the ruling by the court below. It is our concern over the confusion and wastefulness that results from the restrictive rule of cross-examination upon which appellant bases this appeal. Perhaps Professor McCormick best summarized the criticism of this rule when he said:
 
 
 15
 'The restrictive practice in all its forms * * * is productive in many court rooms, of continual bickering over the choice of the numerous variations of the 'scope of the direct' criterion, and of their application to particular cross-questions. These controversies are often reventilated on appeal, and reversals for error in their determination are frequent. Observance of these vague and ambiguous restrictions is a matter of constant and hampering concern to the cross-examiner. If these efforts, delays and misprisions were the necessary incidents to the guarding of substantive rights of the fundamentals of fair trial, they might be worth the cost. As the price of the choice of an obviously debatable regulation of the order of evidence, the sacrifice seems misguided.' C. McCormick, The Law of Evidence 27, at page 51 (1954).
 
 
 16
 Several inroads have already been made regarding this restrictive rule, thereby increasing the trial court's discretion in such matters. For example, the voluntary offer of testimony on any fact on direct examination results in a waiver as to 'all other relevant facts'. See Brown v. United States, 356 U.S. 148, 157, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958); Johnson v. United States, 318 U.S. 189, 195, 63 S.Ct. 549, 87 L.Ed. 704 (1943); Martin v. United States, 404 F.2d 640, 643 (10th Cir. 1968).
 
 
 17
 Furthermore, in the 'Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates,' Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, 46 F.R.D. 161 (1969), it is recommended in Rule 6-11(b) that:
 
 
 18
 'Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The judge may in the exercise of discretion permit inquiry into additional matters as if on direct examination.' 46 F.R.D. at 302.
 
 
 19
 See also Advisory Committee Notes, 46 F.R.D. at 304.
 
 
 20
 The days of the restrictive rule of cross-examination deservedly appear to be numbered.
 
 
 21
 The judgment of conviction appealed from is affirmed.