UNITED STATES of America, Plaintiff-Appellee,

v.

Robert Hershel DAVENPORT, Defendant-Appellant.

No. 71-1487.

United States Court of Appeals, Fifth Circuit.

Oct. 13, 1971.

Jack H. Kaplan, Gamm, Greenberg & Kaplan, Shreveport, La., for defendant-appellant.

Donald E. Walter, U. S. Atty., D. H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., for plaintiff-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

PER CURIAM:

Robert Hershel Davenport appeals from a judgment of conviction and sentence based on an indictment charging him with Interstate Receiving of Stolen Merchandise in violation of Title 18, U.S.C., Section 659.

Defendant first contends there was, in general, insufficient evidence to convict him of the crime and, more specifically, no evidence to establish his specific intent to permanently deprive the owner of the goods stolen.

In reviewing a verdict of guilty challenged on appeal as not supported by sufficient evidence, we must determine whether, taking the view of the evidence most favorable to the government, there is on the record evidence sufficient to convince a jury of the defendant's guilt beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941); United States v. Halperin, 5th Cir. 1971, 441 F.2d 612; United States v. Robertson, 2d Cir. 1962, 298 F.2d 739.

In his brief defendant's counsel has forcefully and effectively pointed out inconsistencies in the testimony of some of the government's witnesses and other evidence which would tend to throw some doubt on their credibility. These arguments should have been, and were, presented to the jury in counsel's closing statement. They have little merit under the test set out above. After considering the entire record with a view most favorable to the government, we find sufficient evidence to establish all elements of the crime beyond any reasonable doubt.

Defendant also contends that the trial court should not have admitted cross-

examination on and evidence of a law suit between defendant and an insurance company which tended to indicate that defendant had defrauded the insurance company.

Upon cross-examination of the defendant, the following colloquy took place between defendant and counsel for the government:

Q Have you ever been arrested lately?

A I have never been arrested in my life.

Q How about making insurance claims as to the loss of a welding machine that you reported stolen?

MR. KAPLAN:

Your Honor, I let counsel go a long way. I fail to see any relevancy to this line of questioning.

THE COURT:

Objection overruled.

THE WITNESS:

Ask me the question again?

BY MR. PERKINS:

Q Have you ever filed any insurance claim as to the theft of a welding machine reported by you to be stolen?

A That's right. Mr. Kaplan handled it for me.

Q You filed that claim through James D. Smith, an insurance representative?

A I don't know who filed it.

Q That welding machine belonged to Mr. Hutchinson?

A If it belonged to Mr. Hutchinson I couldn't file a claim.

Q It belonged to Mr. George Hutchinson when you first got it?

A I got a lot of things from him.

Q That is the welding machine you filed an insurance claim on as being stolen?

A I don't know. I said Mr. Kaplan handled the whole thing.

Q Did you get paid some money for that?

A I think it was prorated. I did get some and I owed him some.

Q You got a little money out of it?

A I got a little bit, yes sir.

Q Didn't you go out to the Pelican Yard with Halverson and tell Halverson to drive it over in Texas?

A No, sir.

Q You deny giving Halverson your automobile to drive that machine over to Texas and filed a theft claim and collected on it?

A I certainly did not do any such thing.

Q Didn't Mr. Hutchinson accuse you of stealing it?

A. Not that I know of.

Appendix pp. 198–99. The government later recalled its witness Howard Halverson, who testified as follows:

Q I refer you to a welding machine and ask you do you recall an instance where the defendant asked you to do something with the welding machine and what did he ask you to do with the welding machine?

MR. KAPLAN:

Your Honor, this has no bearing on this case. There is testimony to the effect that there was a civil law suit and it was settled and it has no bearing on the theft.

THE COURT:

I don't know until he gives an answer. It is something the defendant said to him.

THE WITNESS:

Yes, sir.

BY MR. PERKINS:

Q Where did he tell you to take it?

A It was on the trip back he told me to leave a space on the truck because he had it sold in Texas and for me to leave a space on the back of my truck for the machine on my trip back from Yazoo, Mississippi. He drew a seven foot space

on the truck and he said, "I have a welding machine sold and I want to take it to Texas."

Q Where did you pick up the machine?

A At Caddo Machinery Company.

Q How was that done?

A We towed it out to Pelican Trucking Place.

Q How was it towed?

A Behind an old Chevrolet Station Wagon Mr. Davenport had.

Q What happened at Pelican?

A He had Pelican's men load it with a gin truck on the float in this space.

Q Where did you take it?

A To Donna, Texas.

Q Is that the machine he reported stolen?

A Yes, sir.

Q That is what he got some money on?

A As far as I know, yes, sir.

Q What did Mr. George Hutchinson have to do with it?

A He got the machine from Mr. Hutchinson.

MR. PERKINS:

That's all.

MR. KAPLAN:

If it please the Court, I ask the jury to be instructed to disregard this entire line of testimony.

MR. PERKINS:

It is prior similar instances of conduct.

THE COURT:

You raised the question. You raised it on good conduct in your evidence. It is up to the jury to decide what they believe. He is not charged in this case with defrauding an insurance company. The jury may give what-

ever weight they may see fit to this testimony.

Defendant contends that his cross-examination was improper because the circumstances surrounding the civil suit were irrelevant to the issue of defendant's guilt and tended to prejudice the jury against him. The rebuttal evidence of Halverson was, therefore, likewise irrelevant and even more prejudicial.

The government argues that the questions asked on cross-examination were admissible as tending to show defendant's lack of credibility and to rebut evidence of defendant's good character. The rebuttal testimony of Halverson was likewise admissible to impeach the credibility of defendant's previous testimony concerning the circumstances surrounding the lawsuit.

■■ The only type of evidence admissible to show defendant's character is proof of his reputation in the community. Steinberg v. United States, 5th Cir. 1947, 162 F.2d 120. Specific acts of misconduct cannot be shown. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); French v. United States, 5th Cir. 1956, 232 F.2d 736. If the defendant offers evidence of his reputation for good character, the government may rebut by evidence that his reputation is bad. Michelson v. United States, *supra*. This evidence, however, is limited to testimony concerning reputation only. Proof of specific acts of misconduct is still not admissible. Curtis Publishing Co. v. Butts, 5th Cir. 1965, 351 F.2d 702; United States v. Beno, 2d Cir. 1963, 324 F.2d 582; McCormick, Evidence § 158, at 337 (1954).

■ The questions and evidence in issue cannot, therefore, be allowed to rebut defendant's good character evidence.

■■ Although there is some controversy on this point,[1] in this Circuit a witness may not be impeached by inquiry

---

1. *Compare* cases cited in Wright, Federal Practice and Procedure § 416, at 190–91 (1969) *with* McCormick, Evidence § 42 (1954) *and* 3 Wigmore, Evidence § 983 (3d ed. 1940).

about specific acts of misconduct not resulting in a conviction. Hudson v. United States, 5th Cir. 1967, 387 F.2d 331; Leary v. United States, 5th Cir. 1967, 383 F.2d 851; Roberson v. United States, 5th Cir. 1957, 249 F.2d 737. A defendant who elects to take the stand in his own defense is subject to cross-examination and rebuttal to the same extent as any other witness. United States v. Dillon, 5th Cir. 1971, 436 F.2d 1093; Sharp v. United States, 5th Cir. 1969, 410 F.2d 969.

The questions concerning the civil suit and the alleged insurance fraud were, therefore, improper. Such evidence could admittedly have no bearing on defendant's guilt and was inadmissible for impeachment purposes under this Circuit's rule.

The government earnestly contends that the defendant waived any objection to the cross-examination by failing to contend that the questions were prejudicial. Defendant's attorney did, however, object on grounds of relevancy —the only grounds open to him at the time of the original question. The question in this regard and defendant's denial in response did prove to be quite prejudicial when Halverson was later called to testify as to the alleged insurance fraud.[2] We have no doubt that such evidence of past criminal conduct closely akin to the conduct for which defendant was being tried in the instant case, inquiry into which was opened by the government's previous cross-examination of defendant, was highly prejudicial to the defendant. Assuming that the word "prejudice" was required in defendant's objection, we can see no waiver from defendant's failure to object at a time when no prejudice had become apparent.

The judgment of conviction will, therefore, be reversed and the cause remanded for a new trial.

Reversed and remanded.

2. Even in those jurisdictions allowing inquiry into prior specific acts of misconduct to impeach credibility, such inquiry is limited to the cross-examination itself. Thus if a witness, or the defendant, denies the alleged misconduct, the examiner may not call other witnesses to prove the discrediting acts except where a judgment of conviction can be shown. Simon v. United States, 4th Cir. 1941, 123 F.2d 80; Pullman Co. v. Hall, 4th Cir. 1932, 55 F.2d 139; United States v. Sager, 2d Cir. 1931, 49 F.2d 725; Coulston v. United States, 10th Cir. 1931, 51 F.2d 178; McCormick, Evidence § 42 (1954).