UNITED STATES of America, Plaintiff-Appellee,

v.

Eddie TURQUITT, a/k/a Isom Edward Turquitt, a/k/a Edward Isom Turquitt, Defendant-Appellant.

No. 76–1959.

United States Court of Appeals, Fifth Circuit.

Aug. 12, 1977.

J. Louis Wilkinson, Hiram Dodd, Jr., Birmingham, Ala., for defendant-appellant.

Charles S. White-Spunner, U. S. Atty., Mobile, Ala., Wayman G. Sherrer, U. S. Atty., George C. Batcheler, Ann C. Robertson, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

466

Before GOLDBERG, SIMPSON and FAY, Circuit Judges.

SIMPSON, Circuit Judge:

Eddie Turquitt was convicted by a jury on all four counts of an indictment charging him with unlawful possession of stolen mail matter, knowing the same to have been stolen, in violation of Title 18, U.S.C., Section 1708. He was adjudged guilty and given a general sentence of three years imprisonment and fined $1000, to stand committed until payment of the fine. This appeal rests upon two contentions. Appellant initially argues that the court improperly received evidence, over objection, of a past criminal act for which he had been neither charged nor convicted. He also claims that "plain error", Rule 52(b) F.R. Crim.P., resulted when the trial judge failed to give the jury a cautionary instruction as to remarks made by governmental counsel in his closing argument. We reverse on the first ground.

The government established, partly by testimony and partly by stipulation, that during a thirty day period four checks were stolen from the United States Mails in Birmingham, Alabama. There was testimony that the checks were cashed at Birmingham

banks, and that the endorsements on them were forged.[1] The government produced an expert handwriting/fingerprint analyst, James DeYoung, who testified that he could positively state that the endorsements on two[2] of the four checks were written by the appellant. Although noting "some suspicious agreement" between the endorsements on the other checks and the appellant's handwriting samples, DeYoung stated that some features were present that he could not account for, and that he was unable positively to identify as appellant's the endorsement on those checks. DeYoung testified further that he found appellant's fingerprints on three of the four checks in question, and on some deposit slips and additional checks received in evidence.

Appellant Turquitt testified in his own defense. He denied any guilty knowledge regarding the checks but stated that he possibly had touched some of the checks and deposit slips. He denied signing any of the checks or opening a checking account in the name of L. S. Boggan.[3] Turquitt explained that while he was at the home of Raul Vella, a former employee of Turquitt Masonry Company, Inc., Mr. Vella told him to look at some papers on a table. Appellant

1. The government offered proof that the Count I check was drawn on the Avondale Mills Dividend Account, Birmingham Trust National Bank, dated November 1, 1975, in the amount of $7,443.90, and payable to Herbert C. Ryding, Jr. It was deposited on November 3, 1975, to the checking account of L. S. Boggan at a branch office of the Birmingham Trust National Bank. Another check, the subject of Count II was drawn on the Avondale Mills Dividend Account, Birmingham Trust National Bank, dated November 1, 1975, in the amount of $2,394.00, and was payable to the order of Mary Jeffray Ryding. This check was deposited on November 3, 1975, to the account of L. S. Boggan at an office of the Brimingham Trust National Bank. The Count III check was drawn on the Avondale Mills Dividend Account, Birmingham National Bank, dated November 1, 1975, in the amount of $1,217.70 and was payable to the order of Maude Kyndall Ryding. This check was deposited at a branch office of the Birmingham Trust National Bank on or about November 3, 1975, to the account of L. S. Boggan. The fourth check, the subject of Count IV, was drawn on the Steel City

Lumber Company Account, First National Bank of Birmingham, dated December 1, 1975, in the amount of $644.38, and payable to John L. Schumate. It was presented on December 2, 1975, at the First National Bank in Homewood, Alabama, but it was not cashed. A bank employee called Mrs. Schumate on the telephone and learned that the check had never been received, and that Mr. Schumate's endorsement was not on the check. The police were called and arrested Raul Vella, the man who tried to cash the check.

Three of the four checks in question were deposited to a checking account opened in the name of L. S. Boggan. Boggan was produced at trial and testified that he did not open this account, that he had lost his billfold and his identification at a time prior to the opening date of the account.

2. The expert stated that the endorsements on the Herbert C. Ryding, Jr. (Count I) check and the John L. Schumate (Count IV) check were written by the appellant.

3. See Note 1, supra.

testified that he looked through these papers, a checkbook and some checks, and then put them back on the table. Raul Vella was later arrested on December 2, 1975, when he tried to cash the check payable to Schumate covered by Count IV of the indictment.[4] It was Turquitt's further direct testimony that a few days before Raul Vella was arrested, Mr. Vella handed him a check and asked him to cash it, which request he refused. He stated that he touched the check when Mr. Vella handed it to him, but denied signing the name of John L. Schumate on the back of the check.

On cross-examination, appellant was asked by government counsel where he lived from September 1975 through December 1975. Turquitt gave his address as the Arboretum Apartments in Hoover (Alabama), Apartment 1818C. Counsel then asked if he had ever lived at 917C Valley Avenue, and Turquitt denied ever living at that address. The next question was whether he had ever gone under the name of Eddie Von Blitzen. Turquitt denied this also. At this point, defense counsel object-

ed to the line of inquiry, and when the prosecutor said he was "laying a predicate for the—" the trial judge overruled the objection. Appellant was then asked if he had ever signed a lease under the name of Eddie Von Blitzen. Turquitt denied ever doing so, and his attorney again objected. The objection was overruled.[5] The lease and a rental application form, both bearing the signature of Edward Von Blitzen, were admitted into evidence over defense counsel's continuing objection. Further cross-examination revealed that Gene Carter, appellant's longtime friend and employee, lived in the apartment named in the lease signed "Edward Von Blitzen".

On rebuttal, the government called as a witness, Shirley Ray, an employee of Tillman Realty. She stated that she had rented an apartment to Gene Carter and Edward Von Blitzen. When asked if Edward Von Blitzen was in the courtroom, she pointed to the appellant. She also testified that he had signed the lease. Defense counsel consistently objected to these questions.[6] No limiting instructions were given

---

**4.** See Note 1, supra.

**5.** We quote from the trial transcript covering this point in the trial:

Q (by Government) Did you ever go under the name of Eddie Von Blitzen?
A (Defendant) No, sir.
MR. WILKINSON (defense counsel): We object to all of this unless it's connected up—
THE COURT: Let's have a bench conference, please.
MR. BATCHELER (Assistant U. S. Attorney): I am laying a predicate for the—
THE COURT: I overrule the objection.
MR. WILKINSON: we accept. [sic]
Q (BY MR. BATCHELER): On or about September the 18th, 1975, did you sign with Tillman Realty the name Eddie Von Blitzen to a renewal lease?
MR. WILKINSON: We object, may it please the Court. It is outside the scope of this indictment, and it is highly prejudicial and inflammatory.
THE COURT: Mr. Batcheler, are you assuring the Court you are going to connect it up?
MR. BATCHELER: Yes, sir.
THE COURT: All right, overruled.
MR. WILKINSON: We accept. [sic]
Mr. BATCHELER: Let's have them marked.

CLERK JONES: Exhibit 24 for the Government. Exhibit 25 for the Government.
Q (BY MR. BATCHELER): I want to show you Government's Exhibit 24 for identification, and ask you to look at that, please, sir, and see if you signed the name Edward Von Blitzen to that?
A No, sir.
Q Did you, do you know—
MR. WILKINSON: May we have a continuing objection to this whole line of inquiry on the grounds it is irrelevant and is highly prejudicial.
THE COURT: I think you need to restate it periodically, Mr. Wilkinson, but yes, overruled.

**6.** Again, quoting from the trial transcript:

Q (by Government counsel Batcheler): Now, the other person, other than Mr. Carter, what was the other person's name who executed a renewal lease, automatic renewal lease with Mr. Carter?
Mr. WILKINSON: We object to this whole line of inquiry again as being irrelevant and prejudicial.
THE COURT: Overruled.
Q (BY MR. BATCHELER): What was his name?
A (Ms. Ray): Edward Von Blitzen.
Q Edward Von Blitzen?
A That is right.

by the trial court with respect to the "lease evidence".

Appellant's first ground of appeal is that the trial court erroneously admitted evidence of an unrelated criminal act, the "lease evidence", indicating either forgery or signing of a lease under an assumed name, for which he had never been charged or convicted, solely for impeachment purposes. He claims that the "lease evidence" severely prejudiced his defense, and that he was deprived of a fair trial by its admission before the jury. The point is well taken and requires reversal of the judgment of conviction.

■■■ "[E]vidence which shows or tends to show commission of crimes not charged is inadmissible in a trial for a particular crime". (citation omitted) *United States v. Broadway*, 477 F.2d 991, 994 (5th Cir. 1973). See also *Weiss v. United States*, 122 F.2d 675 (5th Cir. 1941), cert. denied, 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550 (1942). This rule is necessary to prevent conviction based on a jury belief that the accused is a person of bad character. The jury's determination of guilt or innocence should be based on evidence relevant to the crime charged. This rule is of course subject to several exceptions. Evidence of the commission of other crimes, closely related both in time and nature to the crime charged, may be admissible if offered to prove an essential element of the charged offense, such as motive, intent, identity, guilty knowledge, or a common scheme, plan or design. See *United States v. Crockett*, 514 F.2d 64 (5th Cir. 1975); *United States v. Broadway, supra*; 2 C. Wright, Federal Practice & Procedure § 410 (1969).

■■■ In many cases, evidence of other crimes closely related in time and nature to the crime charged fit at least one of the exceptions to the rule. But evidence that the accused committed a prior criminal offense is inherently dangerous because of the likelihood that prejudice to the defendant may result from confusing the issues by leading the jury to infer that since the defendant has committed a similar crime, he must also have committed the crime for which he is on trial. See *United States v. Goodwin*, 492 F.2d 1141 (5th Cir. 1974). Cautionary instructions by the court may not curb the harmful effects. Because of the high risk of prejudice courts restrict the use of such evidence. Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reason-

Q  Is Mr. Edward Von Blitzen in this courtroom?
A  Yes, he is.
Q  Where is he seated, please, ma'am?
A  Right over here to my right.
MR. WILKINSON: We would object, may it please the Court. We move to exclude the response. The question is irrelevant and it is highly prejudicial and inflammatory and we move to exclude it.
THE COURT: Overruled.
Q  (BY MR. BATCHELER): Now, you said right over to your right, where, please ma'am?
A  At the end of the table, to the right.
MR. BATCHELER: Let the record show that the Defendant was identified as Mr. Von Blitzen.
Q  (BY MR. BATCHELER): All right, I show you what is marked for identification as Government's Exhibit 24, please, ma'am. Do you recognize that lease?

A  Yes, I do.
Q  Did you sign it?
A  I did.

Q  And underneath that is Edward Von Blitzen?
A  Edward Von Blitzen, right.
Q  Who signed that?
A  The gentleman—
MR. WILKINSON: We object again on the same grounds. We don't want to hold things up, but we don't want to waive anything. We object to all of this inquiry as being prejudicial, irrelevant collateral on an impeachment matter, I mean on a relevant matter, which is highly prejudicial and inflammatory.
THE COURT: Overruled.
MR. WILKINSON: We accept.  [sic]

ably necessary to the government's case, *United States v. Goodwin, supra,* and it must be plain, clear, and conclusive, *United States v. Broadway, supra,* before its probative value will be held to outweigh its potential prejudicial effects. See *United States v. Simmons,* 503 F.2d 831, 835 (5th Cir. 1974).

■ The government primarily argues that the "lease evidence" in this case is not evidence of an act constituting a criminal offense. After examining Alabama's forgery statute,[7] we think that the appellant's alleged signing of a false name to a lease clearly could be the basis for criminal charges under the laws of that state. We reject the government's initial argument.

■ The United States also seeks to justify admission of the "lease evidence" by urging that it was offered to authenticate the handwriting of the defendant, and to bolster the handwriting expert's credibility in identifying appellant's writings. Government counsel claims that this evidence was probative in establishing possession of the Schumate (Count IV) check, possession being an essential element of the crime charged. The government's reasoning in this respect is difficult to follow. It seems to be urging that because proof of possession depended in part on the ability of the handwriting expert to recognize and identify appellant's handwriting, the "lease evidence" (the lease itself, the lease application, and the eyewitness testimony of Ms. Ray that she saw Turquitt sign those papers) is relevant to the element of possession. Rule 901(b)(3),[8] Federal Rules of Evidence, is cited to support the admissibility of the "lease evidence", as known handwriting specimens. The applicability of Rule

---

7. Code of Ala., Title 14, § 199 *et seq.* (Recompiled 1958):

   § 199. (4120) (6909) (4719) (3851) (4332, 4333) (3635, 3636) (93, 94) Forgery in first degree.—Any person, who with intent to injure or defraud any person, corporation, state, or government, alters, forges, or counterfeits any bill, note, draft, check, certificate, or other evidence of debt, issued by any incorporated bank or banking company of this or any other state, or by the authority of any law of the United States, or private bank, or by any officer authorized to issue the same, or drawn on any incorporated bank or banking company, or on the treasurer of this state; or who, with such intent, utters and publishes as true any falsely altered, forged, or counterfeited bill, note, draft, check, certificate, or other evidence of debt, so issued or drawn, knowing the same to be altered, forged, or counterfeited, is guilty of forgery in the first degree.

   § 200. (4121) (6910) (4720) (3852) (4340) (3702) (156) Forgery in second degree, of will, deed, note, bond, bill, order, etc.—Any person who, with intent to injure or defraud, falsely makes, alters, forges, counterfeits, or totally obliterates any will of real or personal property, or any deed, conveyance, or other instrument, being or purporting to be the act of another, by which any right or interest in property is, or purports to be transferred, conveyed, or in any way changed or affected; or any bond, bill-single, bill of exchange, promissory note, or any indorsement thereof, the forgery of which does not constitute forgery in the first degree; or any warehouse receipt, or receipt for the payment of money, or any instrument or writing, being or purporting to be the act of another; or any entry in any book account, by which any pecuniary demand or obligation is or purports to be created, increased, discharged, or diminished; or who, with such intent, utters and publishes as true any falsely made, altered, forged, or counterfeited instrument, writing, indorsement, or entry, specified or included in this section, is guilty of forgery in the second degree.

8. Rule 901. Requirement of Authentication or Identification

   (a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

   (b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

   (1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.

   (2) Nonexpert opinion on handwriting. Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.

   (3) Comparison by trier or expert witness. Comparison by the trier of fact or by expert witnesses with specimens which have been authenticated.

   28 U.S.C.A., Fed.Rules of Evidence.

901 to this situation appears strained. In any event, other known and less prejudicial specimens would have achieved the same result. Since government exhibit 16 was a four page specimen of appellant's admitted handwriting, it should have sufficed for comparison purposes. Cumulation in this respect was unnecessary, assuming the actual purpose was to provide an additional exemplar of Turquitt's handwriting. In fact the expert's credibility was never seriously jeopardized. His credentials were excellent and he explained his analysis of the handwriting and the fingerprint evidence thoroughly and with great care. The government has failed to show that this evidence was reasonably necessary to its case. The "lease evidence" failed to satisfy any of the recognized exceptions outlined by our decisions concerning evidence of prior criminal acts.[9] The two crimes involved, forgery and possession of stolen mail matter bear little relationship one to another.[10]

■ While it is largely within the trial court's discretion to decide whether other crime evidence is admissible, either in chief or in rebuttal, *Labiosa v. Canal Zone*, 198 F.2d 282 (5th Cir. 1952), this discretion has definite limits. See *United States v. Boyd*, 446 F.2d 1267 (5th Cir. 1971). The trial court gave little consideration to balancing the need and probative value of the evidence against its possibly prejudicial effect. Our own assessment is that the potential for prejudice far outweighed any probative benefit to be derived by allowing the jury to consider the "lease evidence". Its admission was in error.

■ Assuming (as the government argues) that the appellant's act of signing a false name to the lease was not a crime under Alabama law, the "lease evidence" was still inadmissible because it was outside the scope of proper impeachment. The record indicates that the "lease evidence" was introduced solely for impeachment purposes. In his closing argument, government counsel stressed appellant's lack of credibility as demonstrated by such evidence.[11] Moreover, when defense counsel questioned the trial judge as to the court's intended charge on the lease evidence, the judge indicated that the testimony was to be considered only as affecting appellant's credibility as a witness.[12] Turquitt took the stand in an effort to explain the presence of his fingerprints on the checks. His explanations tending to show that the fingerprints were of innocent origin might have created a reasonable doubt in the minds of the jurors as to whether he had participated in the offense charged.[13] The effect of

**9.** For the latest comprehensive Fifth Circuit analysis of the rule respecting receipt of "other offense" evidence, see *United States v. Beechum*, 555 F.2d 487 (5th Cir.) [decided July 11, 1977].

**10.** The trial judge's jury instruction correctly outlined the three elements of proof of an offense under 18 U.S.C., § 1708: (1) that the check had been in the United States Mails, (2) that someone stole the check before it had been delivered to the addressee, and (3) that the accused possessed the check with knowledge that it had been stolen. The physical elements involved in the crime of forgery are substantially dissimilar. See *United States v. Broadway*, text *supra*.

**11.** (Government counsel): We say it is there, but the credibility of the witnesses, ladies and gentlemen, and Mr. Wilkinson just passed over that little fact that he lied to you about the lease. Well, if he lied to you about the lease, would he lie to you about whether or not he touched the checks—.

MR. WILKINSON: We object. Excuse me, George, we object.
MR. BATCHELER: I argued the credibility of the witness, Judge.
THE COURT: Overruled.
MR. WILKINSON: Yes, sir, we accept. [sic]

**12.** MR. WILKINSON (defense counsel): And that is what you intend to charge with respect to this last portion of evidence that the Government introduced about the fact that the lease was signed.

THE COURT: I would intend, and whether you want me to comment on that specifically with regard to the lease or not, but I would intend to charge to them that that sort of testimony has been received only, as I indicated to them there at the last, that it was for their use in connection with credibility and weight and certainly nothing substantive.

**13.** Appellant was never identified as either opening the checking account in the name of L. S. Boggan or depositing or cashing the checks. One government witness, a bank employee, tes-

"lease evidence" might well have been to erase any such doubt from the minds of the jurors.

When an accused takes the stand as a witness he may be impeached as to character by cross-examination and rebuttal to the same extent as any other witness. *United States v. Davenport,* 449 F.2d 696 (5th Cir. 1971). But no witness may be impeached by evidence of any prior specific misconduct or crime for which he has not been convicted. See *United States v. Cluck,* 544 F.2d 195 (5th Cir. 1976); *United States v. Davenport, supra; Hurst v. United States,* 337 F.2d 678 (5th Cir. 1968).[14]

Introduction of the lease and permitting Ms. Ray's testimony was improper as extrinsic evidence of prior misconduct not culminating in a judgment of conviction.

Turquitt asserts additionally that error occurred when the trial court permitted the prosecutor to imply, in his closing argument to the jury, that the accused had a criminal record, and further argues that the trial court should have instructed the jury to draw no inference from the prosecutor's remark. Assuming that this issue is not likely to arise at a later trial, we pretermit discussion of it.

## CONCLUSION

The "lease evidence" was improperly admitted. It would be rank speculation to say that its receipt in evidence was "harmless beyond a reasonable doubt", *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Without this evidence the jury may well have acquitted Turquitt.

He is entitled to a new trial with the "lease evidence" excluded.

REVERSED.

FAY, Circuit Judge, specially concurring.

While joining in the majority opinion and the result, I do not agree with all portions thereof. It is not clear to me that the use of an alias or fictitious name on a lease, in the absence of any evidence of "intent to injure or defraud", could be the basis for criminal charges under the laws of Alabama. Consequently, I do not join in the discussion equating the "lease evidence" as evidence of other crimes.

However, the possible prejudice inherent with such evidence, coupled with the argument advanced by the prosecutor as to such evidence, required the giving of a strong cautionary instruction and the absence of such amounts to "plain error". Certainly defense counsel pointed out his position with numerous objections. If the government was serious in the position taken on appeal, that such evidence was not evidence of other crimes, but rather proper evidence for use by the handwriting expert, it should have requested such an explanation to the jury and not referred to the "lease evidence" as was done in final argument.

In all other respects, I concur.

---

tified that appellant *was not the person* who presented one of the checks in question.

14. Those jurisdictions permitting cross-examination into prior acts of specific misconduct restrict such inquiry. The examiner may not call other witnesses to impeach the accused's denial except as to a judgment of conviction. See *United States v. Davenport, supra,* 449 F.2d at 700 n. 2.