WOODALL, Justice.
 

 Antonio Jackson, Jr., was convicted of the murder of Willie Jennings and was sentenced to life imprisonment. He appealed to the Court of Criminal Appeals, alleging, among other things, that the trial court had erred in overruling his motion to prohibit the State from introducing evidence of his prior conviction for the capital murder of Tavares Cotrell. The Court of Criminal Appeals affirmed the trial court’s judgment, by an unpublished memorandum from which Judge Welch dissented.
 
 Jackson v. State,
 
 33 So.3d 1277 (Ala.Crim.App.2008). Jackson petitioned this Court for the writ of certiorari, which we granted to address whether the Court of Criminal Appeals’ judgment conflicts with
 
 Robinson v. State,
 
 528 So.2d 343 (Ala.Crim.App. 1986), and
 
 Averette v. State,
 
 469 So.2d 1371 (Ala.Crim.App.1985). We hold that it does; consequently, we reverse the judgment of the Court of Criminal Appeals and remand the case.
 

 Facts and Procedural History
 

 In its unpublished memorandum, the Court of Criminal Appeals provided the following facts regarding Jennings’s murder:
 

 “The evidence at trial tended to show the following: Sometime after 6:00 a.m. on December 22, 2004, Willie Jennings and his girlfriend, Ladreka Davis, saw Efferman Moore (‘Efferman’) and Antonio Jackson, Jr., at Western Hills Mall. Jennings told Davis that Efferman did not like him because they had disagreed ‘about some weed or some stuff.’ Jackson had been charged with the capital murder of Jennings’s cousin, Tavares Cotrell. Jennings was wearing a sweatshirt that memorialized his cousin. Jackson approached and denied committing the murder, and Jennings responded, ‘Man, whatever.’
 

 “When Jennings and Davis left the mall, they saw Jackson and his girlfriend, Jerita Smith, sitting in a gray car. As they drove down Third Avenue, Davis heard bullets strike their car. She saw that a peppermint-green car with tinted windows was following them and that two people were firing from inside. Jennings attempted to elude the shooters and crashed into a fence. He fled into a nearby yard and sent Davis to find his mother. As she fled, Davis saw that Efferman was the driver of the green car, that Jackson and a man in a
 
 *1281
 
 red toboggan hat were passengers, and that Jackson was armed with a gun. The men told Efferman to shoot Davis and put her into the car. They then stated to Jennings: ‘Told you you was [sic] going to get this.’ Davis got a ride to the home of Jennings’s mother. A few minutes earlier, a peppermint-green car with tinted windows had pulled into the driveway and had driven away. The two women went to the scene and learned that Jennings was dead.
 

 “Sandra Meyer testified that at approximately 8:00 on the morning of December 22, 2004, she saw a brown car knock Willie Jennings down in the street. The car drove through a yard and a driveway and struck a parked car. Jennings fled, and Jackson followed him, armed with a gun. Jackson fired three shots, and two of them struck Jennings, causing him to fall. While Jennings was on the ground, Jackson kicked him in the head. Jennings died from internal injuries caused by a gunshot wound. Mrs. Meyer said that a second man was with Jackson and that a third person drove the car away. Her husband, Louie Meyer, ran outside with a rifle when he heard the shots. He saw a brown car with a small spare tire on the right front side, coming up the street. Jackson and a companion walked out and pointed guns at Mr. Meyer; he fired three shots at them; and they fled. Mr. Meyer stated that Jackson’s companion was not Efferman. Shortly after the shooting, Detective Herman Harris showed two photo spreads to the Meyers. They were not able to identify pictures of Jackson and Efferman. A few weeks later, they called him to report that they had seen a photograph of Jackson in the newspaper and had recognized him as the man who killed Jennings. The defense introduced a copy of an article that appeared in the
 
 Birmingham News
 
 on January 10, 2005, which stated that Jackson and Efferman were wanted for the Jennings killing. Next to the article were photographs of both men.
 

 “On December 30, 2004, police arrested Christopher Parson, Ronnie Ball and Darrell Moore (‘Darrell’), Efferman’s brother, on a robbery charge. They recovered a Bursa [brand] pistol with a missing magazine spring. That type of spring had been found near Willie Jennings’s body. Forensic tests revealed that a shell casing found at the Jennings shooting had been fired from the recovered gun. Parson testified that Darrell and Ball came to his house on the morning of December 22, 2004, and told him that they had killed Willie Jennings. They said that they and Efferman chased Jennings because he had stolen a pound of marijuana from Efferman and his mother; that Efferman ran over Jennings; that Ball shot Jennings; and that they struck Jennings in the head with the gun. Parson told police that Darrell and Ball had arrived in Effer-man’s brown Honda [automobile] and that there was damage to the front. Darrell and Ball were arrested for Jennings’s murder a few weeks before Jackson and Efferman went to trial.
 

 “Charles Mosley (‘Charles’) testified that Jennings and Cotrell had sold pills for Jackson and that ‘the word around the street’ was that Cotrell had stolen the cell phone Jackson used to make drug sales. Charles said that a few days before Cotrell’s death, Jackson had threatened to kill Cotrell. The State introduced a certified copy of Jackson’s conviction for the capital murder of Cot-rell. Charles’s brother, Larles Mosley (‘Larles’), testified that he had taken some marijuana from Efferman and a woman at gunpoint; that Cotrell’s father
 
 *1282
 
 told him the marijuana belonged to Jackson; and that Ladreka Davis told him that Efferman thought Willie Jennings had taken the marijuana.
 

 “Jackson’s girlfriend, Jerita Smith, testified that Jackson was with her from the time they saw Jennings at the mall until about noon, when they heard that Jennings was dead .... ”
 

 After Jennings was killed and before the case relating to Jennings’s death was tried, Jackson was convicted of the capital murder of Tavares Cotrell. Before jury selection in the case involving Jennings, Jackson moved the trial court to prohibit the State from introducing any evidence related to his capital-murder conviction. Jackson argued that
 

 “such evidence ... is inadmissible by virtue of the general exclusionary rule of character.... [Jackson’s] character is not in evidence and the fact that he was convicted of that other case, or even charged with it, ... is highly prejudicial. The prejudice far outweighs any probative value ... that the State may derive from it.”
 

 The State responded that “the murder [of Tavares Cotrell] is so intertwined in this murder it’s virtually impossible to try the case without bringing up that case”; that the evidence of Jackson’s capital-murder conviction was related to motive in this case; and that the evidence was not so prejudicial to Jackson that it should be excluded. In reply, Jackson argued that nothing in this case would “have anything to do with whether Willie Jennings was a witness in the other case or whether the fact that Willie Jennings [was] wearing that shirt [depicting Tavares Cotrell] had anything to do with him getting killed.” The trial court indicated that it would rule on the admissibility of the evidence of Jackson’s conviction for Cotrell’s murder later, and it instructed the parties not to mention the conviction or the conversation between Jennings and Jackson at the mall during voir dire examination of the jury venire.
 

 After voir dire examination, but before the State had called its first witness, Jackson renewed his motion in limine. The State again argued that “there is absolutely no way ... that we can try this case and not talk about [Cotrell’s] murder, because it goes to motive all the way through the case. That’s how everything started.” Jackson continued to argue that there was no connection between Cotrell’s death and Jennings’s death and that evidence of his prior conviction for Cotrell’s death would be extremely prejudicial to him in the trial for Jennings’s death. The trial court then denied Jackson’s motion in limine, indicating that it would allow the evidence to be admitted. However, the trial court instructed Jackson to renew his objection when the evidence was offered.
 

 Jackson renewed his objection to evidence of his capital-murder conviction just before the State called Charles Mosley to testify. The State had indicated that Mosley would “explain why Antonio Jackson killed Tavares Cotrell.” Jackson objected, arguing again that “the prejudicial value [of the evidence relating to Cotrell’s killing] far outweighfed] any probative value it may have.” Jackson further argued that he was
 

 “being attacked primarily on ... [his] character, in an effort to say that ‘If he did this one time, now, he has probably done it again.’ ... [T]hey [the State] are saying that they are bringing this ... evidence in to prove motive but they have no evidence, whatsoever, of motive, as far as this case is concerned.”
 

 The trial court again overruled the objection, stating that it had made its ruling and would allow the evidence to be introduced. The State then solicited testimony from
 
 *1283
 
 Mosley regarding Jackson’s conviction for the capital murder of Tavares Cotrell, introducing into evidence a certified copy of Jackson’s capital-murder conviction.
 

 Jackson was convicted of murdering Jennings. He appealed that conviction to the Court of Criminal Appeals, arguing, among other things, that the trial court had erred in allowing the State to introduce evidence of his prior conviction for capital murder. The Court of Criminal Appeals affirmed the trial court’s judgment, concluding as follows in its unpublished memorandum:
 

 “Rule 404(b), Ala. R. Evid., provides, in pertinent part: ‘Evidence of other crimes ... is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, preparation, plan, knowledge, identity, or absence of mistake or accident .... ’ The murder conviction tended to show that Jackson had a motive to kill Willie Jennings because, shortly before the shooting, the two of them had a confrontation about the Cotrell case.
 

 “The evidence of the Cotrell murder was necessary because Jackson’s girlfriend stated that the meeting with Jennings in the mall was not a ‘confrontation.’ She also stated that Jackson was with her when Jennings was killed. The evidence was not unfairly prejudicial because the State did not offer any details that could have inflamed the jury and the trial court specifically instructed [the jury] that [it] could consider [the evidence] only as evidence of motive. Therefore, the trial court did not abuse its discretion in admitting evidence of Jackson’s conviction for killing Cotrell.”
 

 We granted Jackson’s petition for the writ of certiorari to determine whether the Court of Criminal Appeals’ conclusion conflicts with its holdings in
 
 Robinson
 
 and
 
 Averette.
 

 Analysis
 

 Jackson argues that the judgment of the Court of Criminal Appeals conflicts with
 
 Robinson
 
 and
 
 Averette,
 
 because, he again argues, the trial court erred in allowing the State to “introduce ... [his] prior conviction for capital murder as an improper attack on his character.” Jackson’s brief, at 16. Before we reach the merits of Jackson’s argument, however, we will address the State’s argument that Jackson did not preserve this issue for appellate review.
 

 I.
 

 We have stated:
 

 “ ‘An appellant who suffers an adverse ruling on a motion to exclude evidence, made
 
 in limine,
 
 preserves this adverse ruling for post-judgment and appellate review only if he objects to the introduction of the proffered evidence and assigns specific grounds therefor at the time of the trial, unless he has obtained the express acquiescence of the trial court that subsequent objection to evidence when it is proffered at trial and assignment of grounds therefor are not necessary.’ ”
 

 Baldwin County Elec. Membership Corp. v. City of Fairhope,
 
 999 So.2d 448, 454 (Ala.2008) (quoting
 
 Owens-Corning Fiberglass Corp. v. James,
 
 646 So.2d 669, 673 (Ala.1994)). “[U]nless the trial court’s ruling on a motion
 
 in limine
 
 is absolute or unconditional, the ruling does not preserve the issue for appeal.”
 
 Perry v. Brakefield,
 
 534 So.2d 602, 606 (Ala.1988).
 

 The State argues that Jackson failed to preserve this issue for review because he did not object when Davis “testified that Jackson had approached [Jen
 
 *1284
 
 nings] and discussed the capital murder case.” State’s brief, at 28. We disagree. Davis testified that Jackson approached Jennings at the mall and told Jennings that he did not kill Cotrell. Davis did not mention anything about Jackson’s being charged with, tried for, or convicted of Cotrell’s murder. Although Jackson initially argued to the trial court that both the conversation between Jackson and Jennings at the mall and Jackson’s conviction for capital murder should be excluded, his argument to this Court is that the trial court erred in allowing the State to present evidence of his conviction. Jackson’s brief, at 16. Davis provided no testimony regarding Jackson’s conviction for capital murder; therefore, Jackson’s failure to object to her testimony does not prevent him from presenting to this Court the issue whether the trial court erred in admitting evidence of his prior conviction.
 

 The State also argues that Jackson has not preserved this issue for review because he failed to object “when the State actually offered ... the certified copy of his capital murder conviction.” State’s brief, at 28. “Thus,” according to the State, “because Jackson did not renew his objection at trial, this issue was not preserved for review.”
 
 Id.
 
 Again, we disagree.
 

 The certified copy of the capital-murder conviction was introduced at the close of Charles Mosley’s testimony. Immediately before Mosley’s testimony, Jackson stated for the third time his objection to the introduction of evidence related to his capital-murder conviction. Jackson’s counsel argued that
 

 “the prejudicial value [of evidence of the conviction] far outweighs any probative value it may have, and I believe he is being attacked primarily on ... [his] character, in an effort to say that
 
 ‘If he
 
 did this one time, now, he has probably done it again.’ And I think the law is contrary to that and says that the State cannot do it.”
 

 The trial court stated that it would allow the evidence to be introduced. Jackson continued to object, arguing that Mosley’s testimony “has nothing to do with the facts of this case. It has nothing to do with a motive, as far as this case is concerned.” The trial court responded: “I’m going to allow it in. I made my ruling.” Contrary to the State’s argument, it is clear that Jackson timely renewed his objections at trial, assigning specific grounds for his objections to the introduction of evidence concerning his capital-murder conviction. Nothing more was required to preserve his arguments for appellate review.
 

 II.
 

 We now address Jackson’s argument that the Court of Criminal Appeals’ judgment conflicts with that court’s holdings in
 
 Robinson
 
 and
 
 Averette.
 
 In those cases, the Court of Criminal Appeals addressed the admissibility of evidence of a defendant’s prior criminal acts. In
 
 Robinson,
 
 the Court of Criminal Appeals stated:
 

 “ ‘ “On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried. This is a general exclusionary rule which prevents the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question.” ’
 
 Pope v. State,
 
 365 So.2d 369, 371 (Ala.Crim.App.1978), quoting C. Gamble,
 
 McElroy’s Alabama Evidence
 
 § 69.01. (3d ed. 1977)
 
 [1]
 
 “This exclusionary rule is simply an application of the character rule which forbids the State to prove the
 
 *1285
 
 accused’s bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors.” ’
 
 Ex parte Arthur,
 
 472 So.2d 665, 668 (Ala. 1985), quoting
 
 McElroy’s supra,
 
 § 69.01(1)....
 

 “... The well-established exceptions to the exclusionary rule include: (1) relevancy to prove identity; (2) relevancy to prove res gestae; (3) relevancy to prove scienter; (4) relevancy to prove intent; (5) relevancy to show motive; (6) relevancy to prove system; (7) relevancy to prove malice; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes.
 
 Willis v. State,
 
 449 So.2d 1258, 1260 (Ala.Crim.App.1984);
 
 Scott v. State,
 
 353 So.2d 36 (Ala.Crim.App.1977). However, the fact that evidence of a prior bad act may fit into one of these exceptions will not alone justify its admission. “‘Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government’s case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects.” ’
 
 Averette v. State,
 
 469 So.2d 1371, 1374 (Ala.Crim.App.1985), quoting
 
 United States v. Turquitt,
 
 [557 F.2d 464] at 468-69 [ (5th Cir.1977) ].”
 

 528 So.2d at 347. Jackson argues here, as he did at trial, that evidence of his capital-murder conviction is not related to motive or to any other exception to the general exclusionary rule and that the prejudicial effect of admitting that evidence far outweighs any probative value it might serve. We agree, and we hold that the trial court erred in denying Jackson’s motion to prohibit evidence of his prior conviction.
 

 As Jackson pointed out at trial, the only link between Cotrell’s death and Jennings’s death is that, on the morning he was killed, Jennings was walking at a mall, wearing a T-shirt with Cotrell’s picture on it, when Jackson, who had been charged with Cotrell’s murder, approached him and told him that he did not kill Cotrell. Although this conversation could be relevant to show that Jackson had a motive to kill Jennings, evidence of Jackson’s capital-murder conviction for killing Cotrell — • which conviction occurred after Jennings was killed — is irrelevant to the issue of motive in this case. Contrary to the State’s argument, evidence of Jackson’s conviction for Cotrell’s murder is not necessary to give context to the conversation between Jennings and Jackson at the mall.
 
 [1]
 

 Finally, even if we were to conclude that evidence of Jackson’s capital-murder conviction somehow fell within one of the ex
 
 *1286
 
 ceptions in Rule 404(b), Ala. R. Evid., to the general exclusionary rule, the State has not demonstrated that the evidence was reasonably necessary to its case. In fact, the State argued and presented evidence indicating that Jennings’s death was related to his involvement with Jackson’s illegal drug business. In order to prove a drug-related motive for the murder, it was not reasonably necessary to prove that Jackson, after Jennings’s murder, was convicted of capital murder for the killing of Cotrell. Therefore, the prejudicial impact of that conviction outweighs any probative value provided by the evidence.
 
 See Robinson,
 
 528 So.2d at 347 (“ ‘ “It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government’s case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects.” ’ ” (quoting
 
 Averette v. State,
 
 469 So.2d at 1374, quoting in turn
 
 United States v. Turquitt,
 
 557 F.2d 464, 468-69 (5th Cir.1977))).
 

 We hold that the trial court exceeded its discretion in allowing the State to introduce evidence of Jackson’s capital-murder conviction and that the Court of Criminal Appeals’ judgment affirming the trial court’s judgment conflicts with the principles set forth in
 
 Robinson
 
 and
 
 Averette.
 
 We, therefore, reverse the Court of Criminal Appeals’ judgment and remand the case to that court for it to remand the case for a new trial.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
 

 BOLIN, J., dissents.
 

 SHAW, J., recuses himself.
 
 *
 

 [1]
 

 . The State also argues that evidence of the conviction was admissible as part of the res gestae. In
 
 Johnson v. State,
 
 272 Ala. 633, 638, 133 So.2d 53, 58 (1961), this Court stated: "In homicide cases all the surroundings and circumstances attending the killing, the declarations of the accused at and after the killing, and his conduct at or near the scene are admissible and form part of the res ges-tae.” Although Jackson's statement to Jennings that he did not kill Cotrell may form part of "the surroundings and circumstances attending the killing,” we cannot agree that Jackson’s conviction for Cotrell’s murder, which occurred after Jennings was killed, falls within that definition.