85 So.3d 468 (2011)
Keokie Tareze HUDSON
v.
STATE of Alabama.
No. CR-09-1913.
Court of Criminal Appeals of Alabama.
August 26, 2011.
Rehearing Denied October 28, 2011.
*469 William K. Bradford, Mountain Brook; and Cynthia Hooks Umstead, Birmingham, for appellant.
Troy King and Luther Strange, attys. gen., and Cheairs M. Porter, asst. atty. gen., for appellee.
BURKE, Judge.
Keokie Tareze Hudson was convicted of two counts of attempted murder, violations of § 13A-4-2, Ala.Code 1975, and one count of discharging a firearm into an occupied vehicle, a violation of § 13A-11-61, Ala.Code 1975. He was sentenced as a habitual felony offender to concurrent sentences of life imprisonment for each conviction of attempted murder, and to 20 years' imprisonment for the shooting-into-an-occupied-vehicle conviction. Additionally, he was fined $50, payable to the Alabama Crime Victims Compensation Fund, for each count. This appeal followed.
Hudson raises two issue on appeal. First, he argues that the trial court improperly admitted collateral acts evidence, pursuant to Rule 404(b), Ala. R. Evid. Second, he contends that the trial court's limiting instructions regarding the Rule 404(b) evidence were overly broad and did not indicate the specific purposes for which the jury was to use the evidence.
Hudson was brought to trial on two indictments stemming from two separate incidents. The first incident occurred on January 17, 2009, and formed the basis for the one count of attempted murder and one count of discharging a firearm into an occupied vehicle. The victim, Stanley Miles, testified that he was sitting in his vehicle, talking with a friend, when Hudson approached the vehicle and fired five shots into the vehicle. Miles stated that he was not hit and that he was able to telephone the police. The second incident, which was the basis for the second attempted-murder charge, occurred on June 28, 2009, when Miles was attending "Shep Day," an event where people from the neighborhood gather to socialize and have a cookout. Miles testified that approximately 15 to 20 minutes after he arrived at "Shep Day," Hudson showed up as well. According to Miles, Hudson fired two shots at him, one of which hit Miles in the back, damaging his lungs and heart. Hudson presented evidence suggesting that he was not present at "Shep Day" and that another individual actually shot Miles on June 28, 2009.
The State also presented evidence relating to three collateral acts involving Hudson, Miles, and Miles's brother, Tavaries Bates. The first occurred sometime in February 2008, and involved both Miles and Bates. Early one morning, Miles and Bates drove their vehicle to an alley in the Gate City housing project. Hudson and others were hanging out in the alley. According to the testimony at trial, Hudson apparently believed that Miles and Bates were there to attack Hudson's friend, Marco. Bates testified that Hudson "was saying something like he thought we was trying to jump on Marco or something, but it wasn't like that." (R. 90.) Bates then testified that "[Hudson] just upped with a gun" and pointed it into the vehicle. (R. 90.) According to Bates, Hudson then tried to rob him. During the attempted robbery, Hudson fired the pistol at Bates and the bullet went through Bates's pants leg. Miles also witnessed the incident and *470 testified that after shooting at Bates, Hudson ran back toward him and pointed the gun in his face. (R. 50.)
The second collateral act occurred in November 2008, and involved only Miles. Miles testified that he was at a birthday party for his four-year-old cousin when a man known only as "Stank" knocked on the back door in hopes of purchasing some marijuana from Miles. (R. 53.) Miles refused to sell him any marijuana because there were children in the house. However, Stank refused to leave. From the door, Miles saw Hudson sitting in a vehicle outside the house. Miles testified that Hudson "ups a gun" and fired two shots, one of which went through the bottom of the screen door and hit Miles in the ankle. (R. 53.)
The third collateral act occurred on January 27, 2009, and involved only Tavaries Bates. Bates testified that he was sitting on his girlfriend's porch when Hudson, "Wee Wee," and "Kenny Poo"[1] drove by the house. Bates stated:
"I seen [Hudson] look over me, but I didn't think they would turn around. So by the time I told my little daughter to go in the house, they had been turned around. So when they turned around, I heard like four shots hit me. And one hit me in the leg...."
(R. 106.)
Before trial, the State gave notice that it intended to offer the three collateral acts as evidence pursuant to Rule 404(b), Ala. R. Evid. (C. 55.) During trial, two separate hearings were held outside the presence of the jury on the admissibility of the Rule 404(b) evidence. In response to the court's inquiry about the purpose behind offering the evidence, the State responded:
"Judge, the defendant has already brought into question the issue of identity, not only is this very relevant to identity in this case, it also goes towards his intent. This is an attempted murder.... It goes towards opportunity. Every time [Hudson] sees Stanley Miles, he is shooting at him trying to kill him. These two other instances are exactly what [Rule] 404(b) is designed to be, not for his bad character, but to come in and give the jury a clearer picture as far as intent, plan, opportunity, identity."
(R. 40.) The judge allowed the evidence of the first two collateral acts to come in, stating: "I'm going to admit it for the limited purpose under Rule 404(b) on the issue of intent and identity if identity is an issue."[2] (R. 41-42.) Later in the trial, the judge admitted testimony about the third collateral act. Hudson argued that evidence of the third collateral act should not be admissible because it involved only Tavaries Bates, not the victim in the present case. However, the judge stated: "Well, it would appear to me it's kind of a package deal. I mean, it starts with the two of them [Bates and Miles] and continues with the two of them.... I'm going to admit it with a cautionary instruction as to how [the jury is] to view it. I'll overrule your objection to it." (R. 102-03.)

I.
On appeal, Hudson correctly asserts that Rule 404(b) is an exclusionary rule that prevents the State from introducing evidence of a defendant's bad acts for the purpose of showing the defendant's bad character. He notes that Rule 404(b) does *471 allow the introduction of such evidence for other purposes "such as proof of notice, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
In analyzing Rule 404(b), this Court has stated:
"`evidence of the accused's having committed another act or crime is not admissible if the only probative function of such evidence is to prove bad character and the accused's conformity therewith. This is a general exclusionary rule which prevents the introduction of prior acts or crimes for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question. This rule is generally applicable whether the other crime or act was committed before or after the one for which the defendant is presently being tried. . . .
"`. . . .
"`The foregoing exclusionary rule does not work to exclude evidence of all crimes or acts, only such as are offered to show the defendant's bad character and conformity therewith on the occasion of the now-charged crime. If the defendant's commission of another crime or misdeed is relevant for some other material purpose in the case then it may be admitted.'
"C. Gamble, McElroy's Alabama Evidence § 69.01(1) (5th ed.1996) (footnotes omitted). The other purposes for which collateral-crimes evidence may be admissible, i.e., the exceptions to the exclusionary rule, include:
"`(1) Relevancy to prove physical capacity, skill, or means to commit the now-charged crime; (2) part of the res gestae or part of a continuous transaction; (3) relevancy to prove scienter or guilty knowledge; (4) relevancy to prove criminal intent; (5) relevancy to prove plan, design, scheme, or system; (6) relevancy to prove motive; (7) relevancy to prove identity; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes.'
"Nicks v. State, 521 So.2d 1018, 1026 (Ala.Crim.App.1987), aff'd, 521 So.2d 1035 (Ala.), cert, denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988), quoting Nelson v. State, 511 So.2d 225, 233 (Ala.Crim.App.1986), aff'd, 511 So.2d 248 (Ala.1987), cert, denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988)."
Lewis v. State, 889 So.2d 623, 661 (Ala. Crim.App.2003). Additionally, this Court noted that the exceptions to the exclusionary rule "do not apply unless there is a real and open issue as to one or more of those other purposes. Furthermore, the common plan, scheme, or design exception is essentially coextensive with the identity exception, and applies only when identity is actually at issue." 889 So.2d at 661 (internal citations omitted).
In the present case, the trial court told defense counsel that "it certainly seems that you put identity in issue." (R. 41.) The court went on to state that the evidence would also
"be admissible on the issue of [Hudson's] intent, what he intended to do. Because [Hudson] may not have shot at [Miles] every time he's seen him, but at least in the last two years, he's shot at him apparently every time he's seen him, assuming you believe what Mr. Miles says. Of course, that's a jury issue."
(R. 41.) So, the trial court admitted the evidence for the purposes of showing identity *472 and intent.[3] (R. 41-42.) Hudson argues that the collateral acts offered by the State do not meet the criteria for the identity exception. (Hudson's brief at 17.) Specifically, he contends that the collateral acts are not similar enough to the charged crime i.e., that they lack "a peculiarly distinctive modus operandi, showing that it is the work of the same person." (Hudson's brief at 17.) He cites Irvin v. State, 940 So.2d 331 (Ala.Crim.App.2005), for the proposition that such evidence is admissible only when the surrounding circumstances of the prior acts and those of the charged crime show a great degree of similarity, such that anyone viewing the two offenses would naturally assume that they were committed by the same person.
The circumstances surrounding the collateral acts are that Hudson tried to kill both Stanley Miles and his brother, Tavaries Bates, on several occasions between February 2008, and January 27, 2009. The record reveals that in each incident Hudson was the shooter and either Miles or Bates was the intended victim; that the collateral acts, as well as the incidents that formed the bases of the charges, all happened within an 18-month period; and that all the acts happened in close proximity to the Gate City housing project. These facts, when taken together, show enough similarity to fit within the identity exception to the exclusionary rule. See Stegall v. State, 628 So.2d 1009, 1011-12 (Ala.Crim.App.1993) (finding that the identity exception was met when the prior bad act [indecent exposure] occurred at approximately the same physical location, the method of creating the crime was substantially similar, and the victims were young women with children in the car); Briggs v. State, 549 So.2d 155 (Ala.Crim.App.1989) (evidence of two prior fires allegedly set by a defendant who was on trial for arson was admissible when the defendant's identity was at issue).
Additionally, this Court has held:
"`The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion.' Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000). This is equally true with regard to the admission of collateral-acts evidence. See Davis v. State, 740 So.2d 1115, 1130 (Ala.Crim.App.1998)."
Irvin v. State, 940 So.2d 331, 345 (Ala. Crim.App.2005). Based on the above, it cannot be said that the trial court abused its discretion by admitting the evidence for the purpose of showing identity.
Moreover, it was also admissible to show intent. In Presley v. State, 770 So.2d 104, 109 (Ala.Crim.App.1999), the defendant was convicted of murder made capital because it was committed during an armed robbery of a convenience store. At trial, the defendant argued that he did not intend to rob the convenience store clerk and, therefore, he was guilty only of intentional murder. The prosecution offered testimony from victims of prior armed robberies allegedly committed by the defendant. This Court held that the prior acts were relevant and probative to show that he did have the intent to rob the convenience store.
In the present case, the State had to prove that Hudson intended to cause the death of another person as part of its burden in proving attempted murder. See §§ 13A-4-2, 13A-6-2, Ala.Code 1975. By *473 presenting evidence that Hudson shot at Miles and his brother on prior occasions, the State could demonstrate that Hudson intended to kill Miles on the day in question. Therefore, that evidence fits the Rule 404(b) exception for intent.
However, in order to be admissible, the evidence must not only be relevant and probative. The probative value must be weighed against the danger of unfair prejudice to the defendant.
"`Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government's case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects.' United States v. Turquitt, 557 F.2d 464, 468-69 (5th Cir.1977) (citations omitted).
"However, it is `only when the probative value of evidence is "substantially outweighed by the danger of unfair prejudice," . . . that relevant evidence should be excluded.' United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir. 1982) (emphasis in original). `[T]he probative value of the evidence of other offenses must also be balanced against its "prejudicial nature" to determine its admissibility. "Prejudicial" is used in this phrase to limit the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial.' State v. Daigle, 440 So.2d 230, 235 (La.Ct.App.1983).
"`Of course, "prejudice, in this context, means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contention; but that cannot be ground for exclusion. What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." State v. Hurd, Me., 360 A.2d 525, 527 n. 5 (1976), quoting McCormick, Handbook on the Law of Evidence § 185 at 439 n. 31 (2nd ed.1972).'
"State v. Forbes, 445 A.2d 8, 12 (Me. 1982).
". . . .
"`[W]hen the evidence shows a common scheme or plan and the similarities between the two offenses are so numerous and distinctive that the evidence has great probative value, the fact that it leads inexorably to the logical conclusion that if the defendant committed the one crime he also committed the other, does not constitute "prejudice" but rather proper overwhelming proof of guilt. (People v. Haslouer, supra, 79 Cal.App.3d [818] at pp. 824-829, 145 Cal.Rptr. 234 [(1978) ].)' People v. Rance, 106 Cal. App.3d 245, 164 Cal.Rptr. 822, 825 (1980)."
Averette v. State, 469 So.2d 1371, 1374 (Ala.Cr.App.1985).
The fact that Hudson shot at the victim and his brother on prior occasions is both relevant and probative to show that he had the intent to kill Miles on both January 17, 2009 and June 28, 2009. Additionally, it was reasonably necessary to the State's case because it was the only evidence tending to prove Hudson's intent. Cf. Ex Parte Jackson, 33 So.3d 1279, 1285-86 (Ala.2009). Moreover, the prejudicial *474 nature of the evidence does not substantially outweigh its probative value. The record reveals that Hudson has numerous prior convictions for various offenses. (C. 68-71.) However, the State appears to have chosen these specific collateral acts because of their similarity to the charged crimes. This suggests that the evidence was not introduced to show Hudson's bad character but was intended to show that he possessed the requisite intent; specifically, the intent to kill Miles. It cannot be said that the collateral-acts evidence offered by the State was unfairly prejudicial. Accordingly, the trial court did not err by admitting the Rule 404(b) evidence.

II.
Hudson also argues that the limiting instruction given to the jury regarding the Rule 404(b) evidence was overly broad, thereby constituting reversible error. However, he failed to raise any objections to the limiting instructions at trial. Thus, Hudson is precluded from raising the issue on appeal. This Court has long held that "[i]n order to preserve for review an objection to the giving or the denial of a jury instruction, it is necessary for the appellant to state for the record upon what specific grounds the objection is made." Buford v. State, 891 So.2d 423, 431 (Ala. Crim.App.2004), quoting Cauley v. State, 681 So.2d 1105, 1107 (Ala.Crim.App.1996).
In Jackson v. State, [Ms. CR-09-1580, December 17, 2010] ___ So.3d ___ (Ala. Crim.App.2010), the appellant argued that the circuit court erroneously failed to give the jury a limiting instruction regarding the admission of his prior convictions. This Court stated:
"At trial, [the appellant] neither requested a limiting instruction nor objected to the circuit court's instructions. Rule 21.3, Ala. R.Crim. P., provides, in relevant part, that `[n]o party may assign as error the court's . . . giving of an . . . incomplete or otherwise improper oral charge, unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection.' See also Shouldis v. State, 953 So.2d 1275, 1282 (Ala.Crim.App. 2006) (holding that the appellant's challenge to the circuit court's jury instruction was not preserved and thus was not properly before this Court). Because [the appellant] failed to request a limiting instruction and failed to object to the circuit court's instruction, he did not preserve this issue for this Court's review. Therefore, this issue does not entitle him to any relief.
Jackson v. State, ___ So.3d at ___.
Like the appellant in Jackson, Hudson failed to object to either of the trial court's limiting instructions. (R. 59, 110.) Consequently, he is precluded from raising the issue on appeal and is not entitled to relief.
For the foregoing reasons, the judgment of the trial court is due to be affirmed.
AFFIRMED.
WINDOM and JOINER, JJ., concur; WELCH, P.J., dissents, with opinion, joined by KELLUM, J.
WELCH, Presiding Judge, dissenting.
The majority affirms Keokie Tareze Hudson's convictions for two counts of attempted murder and one count of discharging a firearm into an occupied vehicle, charges based on two separate incidents. The first incident occurred on January 17, 2009, and the victim, Stanley Miles, testified that he was sitting in his car and talking with a friend when Hudson approached them and fired five shots into the vehicle. The second incident occurred on June 28, 2009, when Miles was attending a neighborhood gathering. *475 Miles testified that Hudson arrived at the gathering approximately 15 to 20 minutes after he arrived and that Hudson fired two shots at him, one of which hit Miles in the back, damaging his lungs and heart. The State also presented evidence relating to three other collateral acts involving Hudson, Miles, and Miles's brother, Tavaries Bates. The trial court admitted the collateral-act evidence over Hudson's objections; Hudson raises those objections again on appeal. The majority finds no error in the trial court's admission of the evidence. I disagree, and I would hold that the trial court committed reversible error when it admitted evidence of two of the collateral acts because that evidence was not admissible.
"Evidence of prior or subsequent collateral bad acts and crimes is generally inadmissible." Bailey v. State, 75 So.3d 171, 183 (Ala.Crim.App.2011). The well established rule is that a defendant's guilt or innocence is to be based on evidence relevant to the crime with which he is currently charged. Evidence of collateral bad acts is "presumptively prejudicial because it could cause the jury to infer that, because the defendant has committed crimes in the past, it is more likely that he committed the particular crime with which he is chargedthus, it draws the jurors' minds away from the main issue." Ex parte Drinkard, 777 So.2d 295, 296 (Ala. 2000). The general rule of exclusion of collateral-act evidence protects the defendant's right to a fair trial because the prejudicial effect of evidence of other crimes or bad acts is likely to far outweigh any probative value that might be gained from admitting the evidence. E.g., Irvin v. State, 940 So.2d 331 (Ala.Crim.App. 2005). "Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of jurors." C. Gamble, McElroy's Alabama Evidence § 69.01(1) (5th ed.1996).
Although the general rule is one of prohibition of collateral-act evidence, that evidence can be admitted for limited purposes in some cases. Rule 404(b), Ala. R. Evid., provides, in pertinent part:
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ."
That a collateral bad act or offense might be offered for one of the "other purposes" does not automatically render the evidence admissible. Further analysis must be performed by the trial court:
"`Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government's case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects.' United States v. Turquitt, 557 F.2d 464, 468-69 (5th Cir.1977) (citations omitted).
"However, it is `only when the probative value of evidence is "substantially outweighed by the danger of unfair prejudice," . . . that relevant evidence should be excluded.' United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir. 1982) (emphasis in original). `[T]he probative value of the evidence of other *476 offenses must also be balanced against its "prejudicial nature" to determine its admissibility. "Prejudicial" is used in this phrase to limit the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial.' State v. Daigle, 440 So.2d 230, 235 (La.Ct.App.1983)."
Averette v. State, 469 So.2d 1371, 1374 (Ala.Crim.App.1985). Determinations of the admissibility of evidence are matters for the trial court's discretion, and those determinations will be reversed only if the trial court abuses its discretion. See, e.g., Tariq-Madyun v. State, 59 So.3d 744 (Ala. Crim.App.2010).
The State's pretrial notice of the proposed Rule 404(b) evidence stated, in relevant part:
"1. Between April to May 2008, Keokie Hudson attempted to rob Tavaries Bates, the victim's brother, and shot at him while the victim was with his brother.
"2. On November 8, 2008, Keokie Hudson shot at Stanley Miles, the victim, in the current case, while he was at a birthday party located at 7542 66th Street South, Birmingham, AL 35206.
"3. On January 27, 2009, Keokie Hudson drove by the victim's house where he lived with his brother Tavaries Bates at ____ 6th Avenue South, Birmingham, AL 35215. When Keokie drove by the house, he shot into it striking Tavaries Bates who was standing on the porch."
(C. 120.)
At trial, outside the jury's presence, the court considered testimony about the three collateral acts and admitted the testimony for limited purposes. Although the majority states that the trial court admitted the evidence to show identity and intent, the record indicates that the majority's statement is only partially correct. At the conclusion of the hearing on the admissibility of the first two collateral acts, the trial court stated that it would admit evidence of those acts for a limited purpose on the issue of intent and on identity, if identity became an issue. (R. 41-42.) However, the trial court then instructed the jury during Miles's testimony that the first two collateral acts were "admissible on the issues of intent, motive, or identity." (R. 59.) After hearing testimony outside the presence of the jury from Tavaries Bates about the third collateral actHudson's shooting Bates while Bates was at his girlfriend's residencethe court overruled Hudson's objection to the evidence and rejected Hudson's argument that the evidence was inadmissible because Miles was not the victim of that shooting. The trial court then instructed the jury that the testimony from Bates about his being shot was "offered for a very limited purpose, not that the defendant is just a person of bad character and he acted in conformity with that bad character on this occasion. But it's offered to show intent, motive, plan, scheme, design, those types of issues for that limited purpose only." (R. 110.)[4]
*477 The majority holds that testimony about the three collateral acts was properly admitted because, the majority reasons, the testimony was relevant to prove identity and intent. In its discussion of the reasons the collateral evidence fits within the identity exception, the majority holds, in relevant part:
"The circumstances surrounding the collateral acts are that Hudson tried to kill both Stanley Miles and his brother, Tavaries Bates, on several occasions between February 2008 and January 27, 2009. The record reveals that in each incident Hudson was the shooter and either Miles or Bates was the intended victim; that the collateral acts, as well as the incidents that formed the bases of the charges all happened within an 18-month period; and that all the acts happened in close proximity to the Gate City housing project. These facts, when taken together, show enough similarity to fit within the identity exception to the exclusionary rule."
85 So.3d at 472.
I am compelled to note, first, that the State did not argue at trial, nor did the trial court hold, that the collateral acts and the crimes for which Hudson was being tried had been committed in a novel or peculiar manner. Rather, the State essentially argued that evidence of the collateral acts was admissible in Hudson's trial because Hudson had previously shot at Miles and Bates and that rationale is the very essence of the general prohibition against collateral-act evidence. Evidence is not admissible pursuant to Rule 404(b) when it is offered to prove a defendant's character and to show the defendant's conformity therewith. As for the trial court, when it ruled that the collateral-act evidence was admissible, the court simply stated that the defense had placed in issue Hudson's identity as the shooter. Thus, in determining that the collateral crimes were sufficiently similar to the crimes for which Hudson was on trial, the majority makes an argument that neither the State nor Hudson made below.
As for the substance of the majority's holding, I believe that the majority's application of the identity exception to the exclusionary rule is far too liberal in this case. The principles governing the identity exception are well established. In Irvin v. State, 940 So.2d 331 (Ala.Crim.App. 2005), this Court stated:
"Collateral-act evidence is admissible to prove identity only when the identity of the person who committed the charged offense is in issue and the charged offense is committed in a novel or peculiar manner. 1 Charles W. Gamble, McElroy's Alabama Evidence § 69.01(8) (5th ed.1996); Ex parte Arthur, 472 So.2d 665 (Ala.1985); Johnson v. State, 820 So.2d 842, 861 (Ala.Crim. App.2000); Tyson v. State, 784 So.2d 328, 344 (Ala.Crim.App.), aff'd, 784 So.2d 357 (Ala.2000). `Under the identity exception to the general exclusionary rule prohibiting the admission of other or collateral crimes as substantive evidence of the guilt of the accused, the prior crime is not relevant to prove identity unless both that and the now-charged crime are "signature crimes" having the accused's mark and the peculiarly distinctive modus operandi so that they may be said to be the work of the same person.' Bighames v. State, 440 So.2d 1231, 1233 (Ala.Crim.App. 1983). `[E]vidence of a prior crime is admissible only when the circumstances surrounding the *478 prior crime and those surrounding the presently charged crime "exhibit such a great degree of similarity that anyone viewing the two offenses would naturally assume them to have been committed by the same person.'" Ex parte Arthur, 472 So.2d at 668 (quoting Brewer v. State, 440 So.2d 1155, 1161 (Ala.Crim. App.1983)). See also Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953); and Govan v. State, 40 Ala.App. 482, 115 So.2d 667 (1959) (recognizing that the identity exception is applicable only where both the prior crime and the charged offense were committed in the same special or peculiar manner).
"When extrinsic offense evidence is introduced to prove identity, the likeness of the offenses is the crucial consideration. In other words, the physical similarity must be such that it marks the offenses as the handiwork of the accused."
940 So.2d at 347. (Emphasis added.)
The circumstances of this case in no way support the majority's holding, and the legal principles governing the admissibility of collateral-act evidence to prove identity demand a reversal here. The charged offenses and the collateral acts were not committed in any special or peculiar manner that would cause one to assume naturally that they had been committed by the same person. In fact, the circumstances surrounding the instances from which the charges arose were not even similar to one another. Furthermore, the circumstances surrounding the three collateral acts were not at all similar to one another. None of the crimes here could be considered "signature crimes," i.e., crimes that had a distinctive modus operandi that identified Hudson as the perpetrator. Nothing identified any of the offensescharged or uncharged"as the handiwork of the accused." Irvin, 940 So.2d at 347. The majority's assertion that the identity exception applied because the incidents occurred within an 18-month period, because each incident involved Hudson as the shooter and either Miles or his brother as a victim, and because the incidents all occurred in or near the housing project is untenable; if the identity exception applied to allow these collateral acts into evidence, the exception would be rendered virtually meaningless.
"`Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated . . . rapes. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' 1 McCormick on Evidence § 190 at 801-03 (4th ed.1992) (footnotes omitted)."
Hurley v. State, 971 So.2d 78, 83 (Ala. Crim.App.2006).
The only probative function of the evidence offered here was an impermissible one: "to prove the character of a person in order to show action in conformity therewith." Rule 404(b), Ala. R.Crim. P. The collateral acts were not admissible under the identity exception. The trial court abused its discretion when it admitted the evidence under the identity exception, and I disagree with the majority's analysis and decision as to this issue.
As for the majority's determination that the collateral acts were admissible to show Hudson's intent, I also disagree with this holding. The details regarding the collateral incidents that were developed at trial revealed that two of the collateral events involved Hudson's actions toward a third party, the victim's brother, Bates, and that Miles was not even present during the commission of the third collateral act. The details regarding the collateral acts were confusing with regard to Hudson's intent, and that confusion was exacerbated by the fact that two of the three collateral *479 crimes involved Bates, and not Miles. In fact, Bates testified that the first collateral actwhen Hudson attempted to rob him appeared to have occurred because Hudson was under the influence of drugs. The majority fails to explain how collateral incidents in which Hudson allegedly shot the victim's brother were evidence of Hudson's intent to shoot the victim during the subsequent incidents for which he was being tried. Rather, the majority simply states:
"In the present case, the State had to prove that Hudson intended to cause the death of another person as part of its burden in proving attempted murder. See §§ 13A-4-2, 13A-6-2, Ala.Code 1975. By presenting evidence that Hudson shot at Miles and his brother on prior occasions, the State could demonstrate that Hudson intended to kill Miles on the day in question. Therefore, that evidence fits the Rule 404(b) exception for intent."
85 So.3d at 472-73.
I disagree. First, the quote from the majority opinion indicates that the primary purpose for introducing the collateral-act evidence was to encourage the jury to find Hudson guilty of the present shooting charges based on the fact that Hudson had previously shot at Miles and another man and that in the present shooting he had, apparently, acted in conformity with the prior acts. The majority's rationale does not support its determination that the collateral-act evidence fit within the intent exception of Rule 404(b).
Second, this Court held in Hinkle v. State, 67 So.3d 161 (Ala.Crim.App.2010), a case presenting a similar issue, that evidence of a collateral offense was improperly admitted. Allen Hinkle was convicted for the shooting death of Caneshua Henry and for the attempted murder of Henry's cousin. The trial court permitted testimony to the effect that, a few weeks before the shooting, Hinkle had struck Caneshua multiple times in the face during an argument; the court determined that the collateral-act evidence was admissible to prove Hinkle's intent. We disagreed and said:
"Hinkle contends that because the jury could infer Hinkle's intent to murder Caneshua from Hinkle's use of a deadly weapon in effectuating the murder, the State could not present evidence of a collateral offense in order to prove intent. The Alabama Supreme Court has recognized that a defendant's use of a deadly weapon to kill a victim is sufficient to give rise to an inference that the defendant intended to kill the victim. See, Ex parte Burgess, 827 So.2d 193, 199 (Ala.2000) (`intent to kill may be inferred from the defendant's act of using a deadly weapon.'). Thus, by demonstrating that Hinkle used a handgun to shoot and kill Caneshua, the State produced sufficient evidence from which the jury could infer that Hinkle acted with the requisite intent to murder Caneshua Henry. However, this Court has held that once the inference has been created, the State may not present evidence of collateral offenses to support a showing of intent. See Hunter v. State, 802 So.2d 265, 269 (Ala.Crim.App. 2000), quoting Brewer v. State, 440 So.2d 1155, 1159 (Ala.Crim.App.1983) ("`When the element the State bears the burden of proof on can `be inferred from the act itself,' the State may not use extraneous offenses as circumstantial evidence of that element in its case in chief.'") (citations omitted). Accordingly, the trial court erred in allowing the State to present testimony regarding the prior altercation between Hinkle and Caneshua as evidence of intent to commit the charged offense, pursuant to Rule 404(b), because the facts of the murder *480 already gave rise to an inference of intent."
67 So.3d at 164.[5]
As in Hinkle, the evidence about the charged shootings presented at trial already gave rise to an inference of Hudson's intent to murder Miles. The jury heard testimony that on one occasion Hudson had fired multiple shots into a vehicle in which Miles was a passenger, and that, in the other incident, Hudson had walked up to Miles at a social gathering and had fired two shots at him, one of which struck him in the back and damaged his lungs and heart. There was no dispute about the intention of the shooter that might have warranted admission of any collateral-act evidence to prove intent. The defense did not argue that the shootings resulted from an accident or that Hudson had fired the shots in self-defense or during a heated confrontation. Rather, if Hudson committed the shootings, his intent was evident from the use of the deadly weapon. Therefore, the trial court abused its discretion admitted the collateral acts to prove intent.
For purposes of this dissent I assume, without deciding, that the second collateral act proffered by the Statethe November 8, 2008, shooting of Mileswas properly admitted to show Hudson's motive. Even assuming that the collateral-act evidence involving Miles was admissible, the collateral acts involving Miles's brother did not meet the basic requirements of the balancing test: "The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government's case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects." Averette v. State, 469 So.2d 1371, 1374 (Ala.Crim.App.1985), quoting United States v. Turquitt, 557 F.2d 464, 468-69 (1977) (emphasis added). The majority has not made any attempt to explain how evidence about shootings in which Miles's brother was the victim was relevant and, in my opinion, the majority could not do so because that evidence was clearly irrelevant. Even if the second collateral act that involved Hudson's firing a shot at Miles would have been admissible standing alone, the jury here was also provided with irrelevant, unduly prejudicial evidence about Hudson's actions toward Miles's brother, and that evidence served only to portray Hudson as having poor character and to encourage the jury to find Hudson guilty of the charged crimes because in committing them he was acting in conformity with his character.
Finally, the trial court failed to consider the balancing of the prejudicial effect of the evidence relative to its possible probative value, and the majority here also has failed to adequately balance the relevant factors. A proper balancing of the prejudicial effect of evidence relative to its possible probative value requires an analysis of the purpose for which the evidence was offered, whether the proffered evidence was relevant and reasonably necessary to the State's case, and only then a consideration of whether the evidence is unfairly or unduly prejudicial. See Ex parte Jackson, 33 So.3d 1279, 1284-85 (Ala.2009), and cases quoted therein. Although I would hold that evidence about the first and third collateral incidents was inadmissible because the evidence did not fit within any exception to the general prohibition against such evidence and was not relevant to the State's case, even if the evidence had fit into one or more of the exceptions and had been relevant so that a balancing *481 of the relevant factors was necessary, I would have concluded that the evidence was unduly and unfairly prejudicial to Hudson.
The collateral evidence was not reasonably necessary to the State's case. If the facts regarding the shooting occurred as Miles testified, there would have been no question that Hudson committed the shootings for which he was on trial. The evidence of collateral acts against Miles's brother undoubtedly confused the issue of Hudson's guilt in the charged offenses. The probative value, if any, of the irrelevant testimony about shootings of another person did not outweigh that undue prejudice to Hudson. The admission of irrelevant collateral-act evidence created a substantial danger that the jury was inflamed by the evidence and decided that because Hudson committed other shootings, he also probably committed the crimes for which he was on trial. The majority's decision in this case permits the undue and unfair prejudice that Rule 404(b) was intended to protect against.
Although the trial court has discretion to decide whether collateral-act evidence is admissible, that discretion has limits. I believe the trial court abused its discretion when it admitted the evidence of the collateral acts against Miles's brother. Hudson is entitled to a reversal and a new trial.
For the foregoing reasons, I dissent.
KELLUM, J., concurs.
NOTES
[1] The record is unclear as to the actual identities of "Wee Wee" and "Kenny Poo."
[2] The judge went on to state that defense counsel implied that identity was at issue in his opening statement. (R. 40-41.) Furthermore, Hudson presented evidence at trial that someone else shot Bates on June 28, 2009.
[3] It should be noted that "[a] trial court will not be placed in error for assigning the wrong reason for a proper ruling, if that ruling is correct for any reason." Irvin v. State, 940 So.2d 331, 345 (Ala.Crim.App.2005)(internal citation omitted).
[4] The trial court's instructions were clearly inadequate. See Ex parte Billups, [Ms. 1090554, Dec. 30, 2010] ___ So.3d ___ (Ala. 2010) ("By simply reciting the complete `laundry list' of permissible theories under Rule 404(b), the trial court's instruction in this case gave the jury inadequate guidance. . . . The trial court's instruction also failed to limit the State to the purposesas nonspecific as they werethat it advanced in support of admission of the evidence regarding Billups's involvement in [the collateral incidents]. Thus, we conclude that the trial court erred by failing to limit the jury's consideration of that evidence to only those purposes for which the evidence was purportedly offered by the State (plan, identity, motive, and intent)."). Furthermore, the trial court's final charge to the jury in this case included no instruction about the collateral-act evidence. However, because Hudson did not raise these objections at trial, he failed to preserve the issue for appeal.
[5] The Court held that the error was harmless because the jury would have returned a verdict of guilty regardless of the erroneous admission of that evidence.