BURKE, Judge.
Keokie Tareze Hudson was convicted of two counts of attempted murder, violations of § 13A-4-2, Ala.Code 1975, and one count of discharging a firearm into an occupied vehicle, a violation of § 13A-11-61, Ala.Code 1975. He was sentenced as a habitual felony offender to concurrent sentences of life imprisonment for each conviction of attempted murder, and to 20 years’ imprisonment for the shooting-into-an-occupied-vehicle conviction. Additionally, he was fined $50, payable to the Alabama Crime Victims Compensation Fund, for each count. This appeal followed.
Hudson raises two issues on appeal. First, he argues that the trial court improperly admitted collateral acts evidence, pursuant to Rule 404(b), Ala. R. Evid. Second, he contends that the trial court’s limiting instructions regarding the Rule 404(b) evidence were overly broad and did not indicate the specific purposes for which the jury was to use the evidence.
Hudson was brought to trial on two indictments stemming from two separate incidents. The first incident occurred on January 17, 2009, and formed the basis for the one count of attempted murder and one count of discharging a firearm into an occupied vehicle. The victim, Stanley Miles, testified that he was sitting in his vehicle, talking with a friend, when Hudson approached the vehicle and fired five shots into the vehicle. Miles stated that he was not hit and that he was able to telephone the police. The second incident, which was the basis for the second attempted-murder charge, occurred on June 28, 2009, when Miles was attending “Shep Day,” an event where people from the neighborhood gather to socialize and have a cookout. Miles testified that approximately 15 to 20 minutes after he arrived at “Shep Day,” Hudson showed up as well. According to Miles, Hudson fired two shots at him, one of which hit Miles in the back, damaging his lungs and heart. Hudson presented evidence suggesting that he was not present at “Shep Day” and that another individual actually shot Miles on June 28, 2009.
The State also presented evidence relating to three collateral acts involving Hudson, Miles, and Miles’s brother, Tavaries Bates. The first occurred sometime in February 2008, and involved both Miles and Bates. Early one morning, Miles and Bates drove their vehicle to an alley in the Gate City housing project. Hudson and others were hanging out in the alley. According to the testimony at trial, Hudson apparently believed that Miles and Bates were there to attack Hudson’s friend, Marco. Bates testified that Hudson “was saying something like he thought we was trying to jump on Marco or something, but it wasn’t like that.” (R. 90.) Bates then testified that “[Hudson] just upped with a gun” and pointed it into the vehicle. (R. 90.) According to Bates, Hudson then tried to rob him. During the attempted robbery, Hudson fired the pistol at Bates and the bullet went through Bates’s pants leg. Miles also witnessed the incident and *470 testified that after shooting at Bates, Hudson ran back toward him and pointed the gun in his face. (R. 50.)
The second collateral act occurred in November 2008, and involved only Miles. Miles testified that he was at a birthday party for his four-year-old cousin when a man known only as “Stank” knocked on the back door in hopes of purchasing some marijuana from Miles. (R. 58.) Miles refused to sell him any marijuana because there were children in the house. However, Stank refused to leave. From the door, Miles saw Hudson sitting in a vehicle outside the house. Miles testified that Hudson “ups a gun” and fired two shots, one of which went through the bottom of the screen door and hit Miles in the ankle. (R. 58.)
The third collateral act occurred on January 27, 2009, and involved only Tavaries Bates. Bates testified that he was sitting on his girlfriend’s porch when Hudson, “Wee Wee,” and “Kenny Poo”[1] drove by the house. Bates stated:
“I seen [Hudson] look over me, but I didn’t think they would turn around. So by the time I told my little daughter to go in the house, they had been turned around. So when they turned around, I heard like four shots hit me. And one hit me in the leg....”
(R. 106.)
Before trial, the State gave notice that it intended to offer the three collateral acts as evidence pursuant to Rule 404(b), Ala. R. Evid. (C. 55.) During trial, two separate hearings were held outside the presence of the jury on the admissibility of the Rule 404(b) evidence. In response to the court’s inquiry about the purpose behind offering the evidence, the State responded:
“Judge, the defendant has already brought into question the issue of identity, not only is this very relevant to identity in this case, it also goes towards his intent. This is an attempted murder. ... It goes towards opportunity. Every time [Hudson] sees Stanley Miles, he is shooting at him trying to kill him. These two other instances are exactly what [Rule] 404(b) is designed to be, not for his bad character, but to come in and give the jury a clearer picture as far as intent, plan, opportunity, identity.”
(R. 40.) The judge allowed the evidence of the first two collateral acts to come in, stating: “I’m going to admit it for the limited purpose under Rule 404(b) on the issue of intent and identity if identity is an issue.”[2] (R. 41-42.) Later in the trial, the judge admitted testimony about the third collateral act. Hudson argued that evidence of the third collateral act should not be admissible because it involved only Tavaries Bates, not the victim in the present case. However, the judge stated: “Well, it would appear to me it’s kind of a package deal. I mean, it starts with the two of them [Bates and Miles] and continues with the two of them.... I’m going to admit it with a cautionary instruction as to how [the jury is] to view it. I’ll overrule your objection to it.” (R. 102-03.)
I.
On appeal, Hudson correctly asserts that Rule 404(b) is an exclusionary rule that prevents the State from introducing evidence of a defendant’s bad acts for the purpose of showing the defendant’s bad character. He notes that Rule 404(b) does *471 allow the introduction of such evidence for other purposes “such as proof of notice, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.”
In analyzing Rule 404(b), this Court has stated:
“ ‘evidence of the accused’s having committed another act or crime is not admissible if the only probative function of such evidence is to prove bad character and the accused’s conformity therewith. This is a general exclusionary rule which prevents the introduction of prior acts or crimes for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question. This rule is generally applicable whether the other crime or act was committed before or after the one for which the defendant is presently being tried....
[[Image here]]
“‘The foregoing exclusionary rule does not work to exclude evidence of all crimes or acts, only such as are offered to show the defendant’s bad character and conformity therewith on the occasion of the now-charged crime. If the defendant’s commission of another crime or misdeed is relevant for some other material purpose in the case then it may be admitted.’
“C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (5th ed.1996) (footnotes omitted). The other purposes for which collateral-crimes evidence may be admissible, i.e., the exceptions to the exclusionary rule, include:
“ ‘(1) Relevancy to prove physical capacity, skill, or means to commit the now-charged crime; (2) part of the res gestae or part of a continuous transaction; (3) relevancy to prove scienter or guilty knowledge; (4) relevancy to prove criminal intent; (5) relevancy to prove plan, design, scheme, or system; (6) relevancy to prove motive; (7) relevancy to prove identity; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes.’
“Nicks v. State, 521 So.2d 1018, 1026 (Ala.Crim.App.1987), aff'd, 521 So.2d 1035 (Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988), quoting Nelson v. State, 511 So.2d 225, 233 (Ala.Crim.App.1986), aff'd, 511 So.2d 248 (Ala.1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).”
Lewis v. State, 889 So.2d 623, 661 (Ala.Crim.App.2003). Additionally, this Court noted that the exceptions to the exclusionary rule “do not apply unless there is a real and open issue as to one or more of those other purposes. Furthermore, the common plan, scheme, or design exception is essentially coextensive with the identity exception, and applies only when identity is actually at issue.” 889 So.2d at 661 (internal citations omitted).
In the present case, the trial court told defense counsel that “it certainly seems that you put identity in issue.” (R. 41.) The court went on to state that the evidence would also
“be admissible on the issue of [Hudson’s] intent, what he intended to do. Because [Hudson] may not have shot at [Miles] every time he’s seen him, but at least in the last two years, he’s shot at him apparently every time he’s seen him, assuming you believe what Mr. Miles says. Of course, that’s a jury issue.”
(R. 41.) So, the trial court admitted the evidence for the purposes of showing iden *472 tity and intent.[3] (R. 41-42.) Hudson argues that the collateral acts offered by the State do not meet the criteria for the identity exception. (Hudson’s brief at 17.) Specifically, he contends that the collateral acts are not similar enough to the charged crime i.e., that they lack “a peculiarly distinctive modus operandi, showing that it is the work of the same person.” (Hudson’s brief at 17.) He cites Irvin v. State, 940 So.2d 331 (Ala.Crim.App.2005), for the proposition that such evidence is admissible only when the surrounding circumstances of the prior acts and those of the charged crime show a great degree of similarity, such that anyone viewing the two offenses would naturally assume that they were committed by the same person.
The circumstances surrounding the collateral acts are that Hudson tried to kill both Stanley Miles and his brother, Tavar-ies Bates, on several occasions between February 2008, and January 27, 2009. The record reveals that in each incident Hudson was the shooter and either Miles or Bates was the intended victim; that the collateral acts, as well as the incidents that formed the bases of the charges, all happened within an 18-month period; and that all the acts happened in close proximity to the Gate City housing project. These facts, when taken together, show enough similarity to fit within the identity exception to the exclusionary rule. See Stegall v. State, 628 So.2d 1009, 1011-12 (Ala.Crim.App.1993) (finding that the identity exception was met when the prior bad act [indecent exposure] occurred at approximately the same physical location, the method of creating the crime was substantially similar, and the victims were young women with children in the car); Briggs v. State, 549 So.2d 155 (Ala.Crim.App.1989) (evidence of two prior fires allegedly set by a defendant who was on trial for arson was admissible when the defendant’s identity was at issue).
Additionally, this Court has held:
“ ‘The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.’ Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000). This is equally true with regard to the admission of collateral-acts evidence. See Davis v. State, 740 So.2d 1115, 1130 (Ala.Crim.App.1998).”
Irvin v. State, 940 So.2d 331, 345 (Ala.Crim.App.2005). Based on the above, it cannot be said that the trial court abused its discretion by admitting the evidence for the purpose of showing identity.
Moreover, it was also admissible to show intent. In Presley v. State, 770 So.2d 104, 109 (Ala.Crim.App.1999), the defendant was convicted of murder made capital because it was committed during an armed robbery of a convenience store. At trial, the defendant argued that he did not intend to rob the convenience store clerk and, therefore, he was guilty only of intentional murder. The prosecution offered testimony from victims of prior armed robberies allegedly committed by the defendant. This Court held that the prior acts were relevant and probative to show that he did have the intent to rob the convenience store.
In the present case, the State had to prove that Hudson intended to cause the death of another person as part of its burden in proving attempted murder. See §§ 13A-4-2, 13A-6-2, Ala.Code 1975. By *473 presenting evidence that Hudson shot at Miles and his brother on prior occasions, the State could demonstrate that Hudson intended to kill Miles on the day in question. Therefore, that evidence fits the Rule 404(b) exception for intent.
However, in order to be admissible, the evidence must not only be relevant and probative. The probative value must be weighed against the danger of unfair prejudice to the defendant.
“ ‘Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government’s case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects.’ United States v. Turquitt, 557 F.2d 464, 468-69 (5th Cir.1977) (citations omitted).
“However, it is ‘only when the probative value of evidence is “substantially outweighed by the danger of unfair prejudice,” ... that relevant evidence should be excluded.’ United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir.1982) (emphasis in original). ‘[T]he probative value of the evidence of other offenses must also be balanced against its “prejudicial nature” to determine its admissibility. “Prejudicial” is used in this phrase to limit the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial.’ State v. Daigle, 440 So.2d 230, 235 (La.Ct.App.1983).
“ ‘Of course, “prejudice, in this context, means more than simply damage to the opponent’s cause. A party’s case is always damaged by evidence that the facts are contrary to his contention; but that cannot be ground for exclusion. What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one.” State v. Hurd, Me., 360 A.2d 525, 527 n. 5 (1976), quoting McCormick, Handbook on the Law of Evidence § 185 at 439 n. 31 (2nd ed.1972).’
“State v. Forbes, 445 A.2d 8, 12 (Me.1982).
[[Image here]]
“ ‘[Wjhen the evidence shows a common scheme or plan and the similarities between the two offenses are so numerous and distinctive that the evidence has great probative value, the fact that it leads inexorably to the logical conclusion that if the defendant committed the one crime he also committed the other, does not constitute “prejudice” but rather proper overwhelming proof of guilt. (People v. Haslouer, supra, 79 Cal.App.3d [818] at pp. 824-829, 145 Cal.Rptr. 234 [ (1978) ].)’ People v. Rance, 106 Cal.App.3d 245, 164 Cal.Rptr. 822, 825 (1980).”
Averette v. State, 469 So.2d 1371, 1374 (Ala.Cr.App.1985).
The fact that Hudson shot at the victim and his brother on prior occasions is both relevant and probative to show that he had the intent to kill Miles on both January 17, 2009 and June 28, 2009. Additionally, it was reasonably necessary to the State’s case because it was the only evidence tending to prove Hudson’s intent. Cf. Ex Parte Jackson, 33 So.3d 1279, 1285-86 (Ala.2009). Moreover, the prejudicial *474 nature of the evidence does not substantially outweigh its probative value. The record reveals that Hudson has numerous prior convictions for various offenses. (C. 68-71.) However, the State appears to have chosen these specific collateral acts because of their similarity to the charged crimes. This suggests that the evidence was not introduced to show Hudson’s bad character but was intended to show that he possessed the requisite intent; specifically, the intent to kill Miles. It cannot be said that the collateral-acts evidence offered by the State was unfairly prejudicial. Accordingly, the trial court did not err by admitting the Rule 404(b) evidence.
II.
Hudson also argues that the limiting instruction given to the jury regarding the Rule 404(b) evidence was overly broad, thereby constituting reversible error. However, he failed to raise any objections to the limiting instructions at trial. Thus, Hudson is precluded from raising the issue on appeal. This Court has long held that “[i]n order to preserve for review an objection to the giving or the denial of a jury instruction, it is necessary for the appellant to state for the record upon what specific grounds the objection is made.” Buford v. State, 891 So.2d 423, 431 (Ala.Crim.App.2004), quoting Cauley v. State, 681 So.2d 1105, 1107 (Ala.Crim.App.1996).
In Jackson v. State, [Ms. CR-09-1580, December 17, 2010] — So.3d - (Ala.Crim.App.2010), the appellant argued that the circuit court erroneously failed to give the jury a limiting instruction regarding the admission of his prior convictions. This Court stated:
“At trial, [the appellant] neither requested a limiting instruction nor objected to the circuit court’s instructions. Rule 21.3, Ala. R.Crim. P., provides, in relevant part, that ‘[n]o party may assign as error the court’s ... giving of an ... incomplete or otherwise improper oral charge, unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection.’ See also Shouldis v. State, 953 So.2d 1275, 1282 (Ala.Crim.App.2006) (holding that the appellant’s challenge to the circuit court’s jury instruction was not preserved and thus was not properly before this Court). Because [the appellant] failed to request a limiting instruction and failed to object to the circuit court’s instruction, he did not preserve this issue for this Court’s review. Therefore, this issue does not entitle him to any relief.”
Jackson v. State, — So.3d at -.
Like the appellant in Jackson, Hudson failed to object to either of the trial court’s limiting instructions. (R. 59, 110.) Consequently, he is precluded from raising the issue on appeal and is not entitled to relief.
For the foregoing reasons, the judgment of the trial court is due to be affirmed.
AFFIRMED.
WINDOM and JOINER, JJ., concur; WELCH, P.J., dissents, with opinion, joined by KELLUM, J.

. The record is unclear as to the actual identities of “Wee Wee” and "Kenny Poo.”

. The judge went on to state that defense counsel implied that identity was at issue in his opening statement. (R. 40-41.) Furthermore, Hudson presented evidence at trial that someone else shot Bates on June 28, 2009.

. It should be noted that "[a] trial court will not be placed in error for assigning the wrong reason for a proper ruling, if that ruling is correct for any reason.” Irvin v. State, 940 So.2d 331, 345 (Ala.Crim.App.2005)(internal citation omitted).